(March 5, 1913.)

## SAMUEL T. KEIM, Respondent, v. GILMORE & PITTS-BURG R. R. CO., Appellant.

[131 Pac. 656.]

Personal Injury — Negligence — Contributory Negligence — Trespasser and Licensee—Primary Cause of Injury—Duty to Trespasser—Irregular Verdict.

1.   Where K. was walking from a market to his residence and was following a footpath across a railroad right of way, and walking down the side of the track at a reasonable distance from the track and along the station grounds within forty or fifty feet of the depot and in the same direction as a moving train, and was exercising reasonable care to avoid danger or injury, *held*, that the railroad company owed him the duty to exercise reasonable care and take reasonable precaution against inflicting an injury upon him.

2.   A greater and higher degree of care and diligence is required of a railroad company to protect even a trespasser against injury, where such person is upon its right of way at a station or depot grounds, where the company transacts business with the public and where it invites persons to enter its premises, and has reason to expect at all times that there will be persons upon its grounds and premises than it owes to a mere trespasser at an unfrequented place.

3.   Where a railroad company has attached to a train of cars a steam shovel car and hauls the same over its road with jackarms extending to a distance of from eleven to twenty-two inches beyond the ordinary width of cars and beyond the sides of such car, the company is liable for damages inflicted by reason of the jackarm striking a truck on a station ground and hurling it upon a passing pedestrian.  In such case, the railroad company set a danger in motion of which the pedestrian had no notice or knowledge and against which he could not reasonably guard.

4.   It is not error for a trial court to give instructions requested by counsel on each side of the case, setting forth the law applicable to the theory of the case advanced by the party requesting the instruction, if such instructions correctly state the law and there is any evidence in the case which would justify the jury adopting the theory advanced by either the one or the other of the respective parties.

5.   Under the provisions of sec. 4394 of the Rev. Codes, the verdict of a jury is required to be in writing, signed by the foreman

"if all the jurors agree, and by those agreeing if three-fourths, or more, but not all, agree," and must be read by the clerk to the jury and the inquiry made whether it is their verdict.

6. Under the provisions of sec. 4394 of the Rev. Codes, where a verdict is reached but is not agreed to by the entire jury, it should be signed by each member of the jury agreeing to the same, and the court should in such cases see to it that the requirements of the statute are complied with; but where this requirement is not observed but the jury is polled in open court, and ten of them answer that the verdict returned and signed by the foreman is their verdict, and their names are entered on the minutes of the court and no objection or exception is taken to the form of the verdict, and no request is made to have it signed by the jurors agreeing to it, the error is not prejudicial, and the objection cannot be raised for the first time in the appellate court.

7. Where a man, seventy-six years of age with a life expectancy of about six years, as estimated by the mortality tables, is permanently injured and maimed by a railroad company through its negligence and is rendered a permanent sufferer for the remainder of his life, *held*, that the appellate court would not be justified in reducing or disturbing a judgment for $10,000 damages as being excessive.

APPEAL from the District Court of the Sixth Judicial District for Lemhi County. Hon. J. M. Stevens, Judge.

Action for damages for personal injuries. Judgment for plaintiff. Defendant appealed. *Affirmed.*

John H. Padgham and Arthur O. Fording, for Appellant.

The rule of the majority of cases is that where the plaintiff is a trespasser or a mere licensee, the company is liable only for wantonness or wilful negligence. This court does not approve that rule; but as some of those cases may be referred to in argument by way of comparison, we cite the following: *Gillis v. Pennsylvania R. Co.*, 59 Pa. 129, 98 Am. Dec. 317; *Philadelphia & R. Co. v. Hummell*, 44 Pa. 375, 84 Am. Dec. 457; *Redigan v. Boston & M. Co.*, 155 Mass. 44, 31 Am. St. 520, 28 N. E. 1133, 14 L. R. A. 276; *Egan v. Montana C. Co.*, 24 Mont. 569, 63 Pac. 831; *McConkey v. Oregon R. & N. R. Co.*, 35 Wash. 55, 76 Pac. 526; *Burg v. Chicago R. I. & P. R.*

*Co.,* 90 Iowa, 106, 48 Am. St. 419, 57 N. W. 680; *Norfolk & W. R. Co. v. Dunnaway,* 93 Va. 29, 24 S. E. 698; *Devoe v. New York etc. Ry. Co.,* 63 N. J. L. 276, 43 Atl. 899; *Illinois C. R. R. Co. v. Godfrey,* 71 Ill. 500, 22 Am. Rep. 112; *Blanchard v. Lake Shore,* 126 Ill. 416, 9 Am. St. 630, 18 N. E. 799; *Cannon v. Cleveland etc. Ry. Co.,* 157 Ind. 682, 62 N. E. 8.

This court has adopted the more humane rule, that where persons may be expected to be in places of danger, whether licensees or trespassers, there the company should keep a reasonable lookout, according to the circumstances. This is the rule of the following cases: *Anderson v. Great Northern R. Co.,* 15 Ida. 513, 99 Pac. 91; *Townley v. Chicago etc. Ry. Co.,* 53 Wis. 626, 11 N. W. 55; *Cassida v. Oregon R. & N. Co.,* 14 Or. 551, 13 Pac. 438; *Whalen v. Chicago etc. Ry. Co.,* 75 Wis. 654, 44 N. W. 849.

As tending to reconcile the two rules, we cite the following: *Forno v. Pennsylvania R. Co.,* 234 Pa. 538, 542, 83 Atl. 406; *Felton v. Aubrey,* 74 Fed. 350, 20 C. C. A. 436; *Brown's Admr. v. Louisville etc. R. Co.,* 97 Ky. 228, 30 S. W. 639; *Anderson v. Chicago R. R. Co.,* 87 Wis. 195, 58 N. W. 79, 23 L. R. A. 203; *Deans v. Wilmington etc. R. Co.,* 107 N. C. 686, 22 Am. St. 902, 12 S. E. 77.

In our case, the plaintiff was not invited, and the defendant had therefore undertaken no duty to him. He went upon the railroad property in the enjoyment of "an immunity, not a privilege." (*Knight v. Abert,* 6 Pa. 472, 47 Am. Dec. 478; *Felton v. Aubrey,* 74 Fed. 350, 20 C. C. A. 436; *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91.)

From the evidence on behalf of plaintiff, without any reference to that of the defense, it appears that the plaintiff was guilty of contributory negligence; first, by voluntarily leaving the way of safety and walking unnecessarily in a place of danger; second, by walking there without due care for his own safety. (*Forno v. Penna. R. R. Co., supra; Cassida v. Oregon R. & N. Co., supra; Birrell v. Great Northern,* 61 Wash. 336, Ann. Cas. 1912B, 1239, 112 Pac. 362; *Aurora Branch R. Co. v. Grimes,* 13 Ill. 585; *Gulf etc. Ry. Co.*

*v. Wilkins* (Tex. Civ. App.), 32 S. W. 351, 352; *Spaven v. Lake Shore etc. Ry. Co.,* 130 Mich. 579, 587, 90 N. W. 325; *Mobile & O. R. R. Co. v. Stroud,* 64 Miss. 784, 2 So. 171; *Davis v. Boston etc. R. Co.,* 70 N. H. 519, 49 Atl. 108; *Neal v. Railroad,* 126 N. C. 634, 36 S. E. 117, 118, 49 L. R. A. 684.)

F. J. Cowen and E. W. Whitcomb, for Respondent.

Railroad companies must exercise reasonable and ordinary care and precaution to avoid injury either to trespassers or licensees in places where the railroad company knows people are accustomed to gather and frequently go, such as street crossings, stations, etc. (*Troy v. Cape Fear etc. R. Co.,* 99 N. C. 298, 6 Am. St. 521, 6 S. E. 77; *Cassida v. Oregon R. & N. Co., supra; Hicks v. Pacific R. Co.,* 64 Mo. 430; *St. Louis etc. R. Co. v. Crosnoe,* 72 Tex. 79, 10 S. W. 342; *Smith v. Pittsburgh & W. R. Co.,* 90 Fed. 783; *International & G. N. R. Co. v. Jackson,* 41 Tex. Civ. App. 51, 90 S. W. 918; *Louisville & N. R. Co. v. Montgomery,* 14 Ky. Law Rep. 477; *Kansas P. R. Co. v. Ward,* 4 Colo. 30; *Holtzinges v. Penn. R. Co.,* 6 Pa. Dist. 430; *Missouri K. & T. R. Co. v. Scarborough,* 29 Tex. Civ. App. 194, 68 S. W. 196; *Chicago & A. R. Co. v. O'Neil,* 172 Ill. 527, 50 N. E. 216; *Houston & T. Cent. Ry. Co. v. Boozer,* 70 Tex. 530, 8 Am. St. 615, 8 S. W. 119; *Connell v. Southern Ry. Co.,* 91 Fed. 466, 33 C. C. A. 633.)

The following cases relate to personal injuries caused by unnatural projections on moving cars, and to that extent, at least, are like this case: *Sullivan v. Vicksburg etc. R. R. Co.,* 39 La. Ann. 800, 4 Am. St. 239, 2 So. 586; *Baston v. Georgia R. Co.,* 60 Ga. 339; *Chesapeake & O. R. Co. v. Davis,* 119 Ky. 641, 60 S. W. 14.

It is actionable negligence on the part of any railroad company not to exercise reasonable care and precaution to avoid injuring any person whom it might know to be or reasonably expect to be upon its property, provided such party himself was free from contributory negligence. (*Brown v. Boston & M. Ry. Co.,* 73 N. H. 568, 64 Atl. 194.)

"A reasonable lookout, varying according to the danger and surrounding circumstances, is the duty always devolving on those in charge of a railway train in motion, and railway companies are bound to exercise due care to avoid injury to others." (*Houston & T. C. R. Co. v. Sympkins,* 54 Tex. 615, 38 Am. Rep. 632; *Shelby Admr. v. Cincinnati N. O. & T. P. Ry. Co.,* 85 Ky. 224, 3 S. W. 157.)

No lookout was had at the time of moving the train past the depot. (33 Cyc. 786 (B), and cases cited; *Central R. etc. Co. v. Vaughn,* 93 Ala. 209, 30 Am. St. 54, 9 So. 468; *New York C. & St. L. R. Co. v. Kistler,* 66 Ohio St. 326, 64 N. E. 130; *Anderson v. Great Northern Ry. Co.,* 15 Ida. 513, 99 Pac. 91.)

The precautions to be adopted by parties in charge of trains in giving warning of movements of trains increases as the danger of accident and injury is increased. (*Downing v. Morgan's La. etc. Ry. Co.,* 104 La. 508, 29 So. 207; 23 Am. & Eng. Ency., 2d ed., 745.)

"Negligence will not be imputed to one who takes all the care which prudent circumspection would suggest to avoid an injury." (*Sullivan v. Vicksburg Shreveport & Pac. R. Co., supra; Missouri, K. & T. Ry. Co. v. Taylor,* 73 Kan. 482, 85 Pac. 528; *Quill v. New York & R. Co.,* 32 N. Y. St. 612, 11 N. Y. Supp. 80, 16 Daly, 313 affm. in 126 N. Y. 629, 27 N. E. 410; *Willis v. Maysville etc. R. Co.,* 27 Ky. Law 459, 85 S. W. 716; *Yazoo etc. R. Co. v. Metcalf,* 84 Mass. 242, 36 So. 259.)

Even though plaintiff was primarily negligent, which we deny, still, such negligence would not be a bar to his recovery, provided the negligent acts of the defendant were the immediate and direct cause of the injury. (*Pilmer v. Boise Traction Co., Ltd.,* 14 Ida. 327, 125 Am. St. 161, 15 L. R. A., N. S., 254; *Troy v. Cape Fear etc. R. Co.,* 99 N. C. 298, 6 Am. St. 521, 6 S. E. 77; *Grand Trunk R. Co. v. Ives,* 144 U. S. 408, 12 Sup. Ct. 679, 36 L. ed. 485; *Sawyer v. Roanoke R. & L. Co.,* 145 N. C. 24, 58 S. E. 598, 22 L. R. A., N. S., 200.)

AILSHIE, C. J.—This is an appeal from a judgment awarding respondent $10,000 damages. The respondent was injured by a moving train on appellant's road. The accident

occurred on the station grounds at the town of Leadore on about the 28th of August, 1911. Keim, the respondent, lived at the village of Junction, which is about one mile distant from the depot at Leadore. On the morning that the accident occurred, respondent left his home and went over to a meat market on Galena street, which is a short distance south of the depot in Leadore. After he got through at the meat market he started home, and it was necessary for him to cross the railroad track. The wagon road extended diagonally northwesterly across the railroad right of way and to the south and west of the depot, crossing the track about 250 feet west of the depot. Respondent, however, left the wagon road south of the depot and traveled north to the depot, passing between the depot and the railroad track and parallel with the track the length of the depot and some forty or fifty feet down the track, where he met with the accident which inflicted serious injuries upon his person. When he reached the depot, he saw a train of cars on the track, either moving westward or just about starting up. A plank walk of from five to seven feet wide extended parallel with the track in front of the depot from the easterly end of the depot to a point some distance beyond the westerly end thereof. Between the platform and the depot was a space of several feet filled with gravel. Respondent, as he walked past the depot and on to the west, kept off the platform and walked on the gravel. He was therefore from five to seven feet from the track. About forty or fifty feet down the track from the depot there stood a baggage truck. Just as he walked past this truck, leaving it between him and the passing train, a projecting jackarm on a moving steam shovel car which was attached to the train struck the truck and threw it with violence against respondent, knocking him over, severely injuring him, and rendering him unconscious and permanently maimed and disabled.

Appellant has annexed to his brief a map or diagram showing the location of the streets, roads and buildings at Leadore and Junction, and on this map a line is traced from the meat market down the street across the right of way and in front of the depot to the point where respondent was injured.

This line is supposed to represent the course taken by Keim on his way home.   We shall insert this map for the benefit of the illustration it will afford anyone who may have occasion to examine this case.   It is as follows:

This map shows the depot and vicinity.   The dotted line shows Keim's course as described by himself.

A great many assignments of error have been made, but the real and vital questions necessary to be determined may be reduced to a very few propositions.

The first question to be considered is the alleged negligence of the appellant. Appellant insists that no negligence is shown on the part of the railroad company. Now, it appears, and is undisputed, that the whole mischief was caused by this projecting jackarm on the moving steam shovel car. It appears that these arms are placed on each side of such a car to be used in steadying the car when it is in operation, and that they are ordinarily either turned back or taken off when the car is being hauled over the road. On this occasion the jackarm on the side of the car next to the depot and to respondent was projecting. It is uncertain as to the exact distance of this projection, but it seems quite clear from the evidence in the record that it was anywhere from eleven to twenty-two inches. It is clear that the fault here was not with the employee who left the truck alongside the track. The truck was far enough away from the track to clear any ordinary car which was accustomed to pass over the track, and, indeed, it was not touched, so far as the evidence shows, by any cars until the steam shovel car came along. Clearly there was no negligence on the part of the man who left the truck at this place, unless he had notice that the steam shovel car was going to be pulled over the road at this time in the condition in which it was when it passed this truck. The whole trouble in this matter lay with those who were operating the train. If they were going to pull a car over the road with projections on the sides extending from eleven to twenty-two inches farther out than any of the cars usually transported over the road, then it was clearly the duty of such operators to notify other employees to govern their actions accordingly in the matter of leaving freight, baggage, trucks, etc., along the side of the track, and it was likewise the duty of such operatives to maintain a lookout for the protection of those who might be injured or taken unawares by reason of this increased danger from the projections from the steam shovel car. An employee or even a trespasser at the station grounds

may know with almost exact accuracy the distance to which the cars which the company hauls over its road project over the track or beyond the rail. He may accordingly leave freight, baggage or other articles along the track where it would entail no danger upon anyone except for just such an unforeseen condition as arose in this case. The only persons who had it in their absolute power to prevent such an accident as this were the operatives of the train. They might warn other employees or in this case they might have taken off these arms and reduced the car to the standard width, and in the latter event no injury would have befallen the respondent and no damage would have been entailed.

It has been argued with a great deal of force and ingenuity that the operatives of this train could not possibly foresee that Keim would be immediately opposite this truck when the steam shovel car would pass the truck and that they are therefore guilty of no negligence. This argument, however, confesses that the operatives of that train knew that the jackarm would strike the truck, and that they were carrying along with them a danger which might inflict injury upon Keim or any other person similarly situated either at a station ground or anywhere else along the track. The negligence lies back of and prior to the hitting of this truck by the jackarm of the steam shovel car. The real negligence was in carrying this car over the road in a train of cars without maintaining a proper lookout to prevent just such injuries as this. It is clear that they were maintaining no lookout to *prevent accidents from the special hazard of this car.* It is testified by a competent witness that one railroad company would not accept a car from another railroad company for shipment over its line in the condition this car was in, namely, with the jackarms in place and projecting as was the case with this car.

It is insisted that respondent was guilty of contributory negligence. Now, there might be something in this contention if it were shown that respondent knew that the steam shovel car was attached to the passing train and that the jackarms were projecting, or if he had notice that the company was accustomed to pull such a car over its road with the jackarms

projecting, as was the case on this day. It is clear, however, that appellant was not aware of these facts. Neither did he have any information which would put a reasonably prudent man on notice that such thing was likely to take place. He was walking down the track at a reasonable distance from a train of cars. He had the right to assume that the truck was a sufficient distance from the track that it would not be struck by a passing car, and no doubt he saw the cars passing the truck one after the other without striking it or interfering with it. He did not attempt to go over the truck or under the truck, but he passed on his way, leaving the truck between him and the passing cars. He knew that the cars could not strike him unless they left the track, and he had no reason to suppose that any car would strike this truck and throw it upon him. He was in no way speculating with danger or taking any chances that reasonably prudent men would not have taken under similar circumstances. The railroad company set the danger in motion; they were the *active* agents carrying an unusual ·danger over their road.

It has been argued that the respondent was a trespasser on appellant's station grounds and that the company owed him no such duty as it owes to those who are invited to its station on business with the company. It is well settled that a railroad company is not under the same duty to look out and take precautions for the care and safety of a trespasser that it is under to those whom it invites to its stations and grounds for business purposes. It is settled, however, in this state that they are liable to a trespasser for reasonable care and precaution even before their negligence reaches the stage where it may be designated as wanton or wilful negligence. (*Anderson v. Great Northern Ry. Co.*, 15 Ida. 513, 99 Pac. 91.) They have no right to injure or kill a trespasser. To our minds, the care and precaution which the company took in this case in operating this car could not be termed ordinary care. If one of the employees of the company had been passing behind this truck when it was struck by the passing car in the condition in which this steam shovel car was on that day, there could be no question but that such employee could

recover damage. In such case, the employee might be right-fully there under request and employment of the company, and yet he could no more have foreseen this danger than could Keim, who is termed a trespasser. The evidence discloses that Keim was at least a licensee on these premises. Witnesses testify that there was a path from Junction to the markets at Leadore that had been traveled at least ever since the railroad was constructed, and that the course Keim was taking on this occasion was along the course of that path, and that this had been traveled continuously by pedestrians between the two towns ever since the construction of the road. It is well set-tled that where such a custom or practice prevails, the rail-road company is chargeable with notice that licensees or tres-passees, if you please, may be on or along the track at such places. (*Anderson v. Great Northern R. R. Co.*, 15 Ida. 513, 99 Pac. 91; *Illinois Central v. Dickenson*, 91 Ky. 434, 15 S. W. 665.) It should be remembered that respondent was at a place where the appellant might always expect licensees and employees, and where it was the duty of the company to maintain a lookout for persons who might rightfully be on the premises, and even though the respondent were himself a trespasser at that place, the appellant, on the other hand, would be chargeable with a greater duty even to him at that place than it would have been at some remote or isolated place where it was not chargeable with the duty of looking out for those it might expect upon its premises and about its track. (See notes to *Frye v. St. L. I. M. etc. Co.*, 8 L. R. A., N. S., 1069, and *Smith v. Norfolk & So. Ry.*, 25 L. R. A. 287.)

The objections made to the instructions of the court are not well taken. The instructions appear to fairly state the law, and the most that can be said against them is that they state the law applicable to different theories of the case. It often happens, however, in the trial of a lawsuit that such instructions are necessary because one party tries his case on one theory of the law and upon one view of the evidence, while the other party tries his side of the case upon a dif-ferent theory and hopes to produce such evidence as to have his rule of law applicable thereto. A court cannot foresee

what conclusion a jury will reach as to the facts, and so the court often finds himself under the necessity of giving the jury the rule of law applicable to each theory of the case. That appears to have been done in this case. The complaint that the language of the instruction was unintelligible is not a cause for reversal. Instructions should not be confusing, and should be couched in as simple, plain, everyday language as it is possible to use (*Thatcher v. Quirk*, 4 Ida. 267, 38 Pac. 652), but the particular language in which instructions should be couched must be left to the judge who is giving the instruction, so long as the language used states the law approximately correct.

The verdict in this case was concurred in by ten jurors only and was signed by the foreman only. It is urged that this verdict is erroneous and should be set aside. Sec. 4394 of the Rev. Codes provides as follows:

"When the jury, or three-fourths of them, have agreed upon their verdict, they must be conducted into court, their names called by the clerk and the verdict rendered by their foreman. The verdict must be in writing, signed by the foreman, if all the jurors agree, and by those agreeing, if three-fourths or more, but not all, agree, and must be read by the clerk to the jury, and the inquiry made whether it is their verdict. . . . . "

In this case, the jury after returning their verdict were polled in open court, and ten answered that the verdict returned was their verdict and two answered that it was not their verdict. It seems to us that the calling of the names of the jurors and ten of them responding that this was their verdict, and their names being entered upon the minutes of the court at the time, was a sufficient compliance with the statute, and answered all the purposes intended to be accomplished by the statute in requiring them to each sign the verdict where the verdict is not unanimous. Similar statutes elsewhere have been held directory only. (*Morrison v. Overton*, 20 Iowa, 465; *Gurley v. O'Dwyer*, 61 Mo. App. 348; 38 Cyc. 1871.) In this case no objection was made at the time the verdict was returned that it was not signed by the jurors,

and no objection was taken whatever to the form of the verdict or the failure to sign the verdict by those who answered upon the call of their names. It would not be consonant with our practice to allow a reversal of the judgment in a case like this where no objection was taken to the irregularity or failure to comply literally with the statute at the time the error was committed in the lower court. (*Johnson v. Fraser,* 2 Ida. 404, 18 Pac. 48.)

Appellant also complains of the verdict and charges that it is excessive. It appears that the respondent at the time of his injury was about seventy-six years old, and that according to the mortality tables he had a life expectancy of about six years. (20 Am. & Eng. Ency. of Law, 2d ed., 885.) It appears that he has suffered great pain and agony from his injuries, and that he is destined to be a great sufferer the remainder of his days, and will have to be cared for as long as he lives. Under such circumstances, we are not prepared to say that a verdict of $10,000 is excessive. Under the circumstances we do not feel inclined to reduce this judgment.

The judgment should be affirmed, and it is so ordered. Costs awarded in favor of respondent.

Sullivan and Stewart, JJ., concur.

(April 19, 1913.)

### ON PETITION FOR REHEARING.

STEWART, J.—A petition for rehearing has been filed in this case, and in the petition it is very earnestly contended that an injustice has been done the appellant by reason of the judgment in the case being excessive. Counsel has referred to the authorities bearing upon this question, and our attention is also called to the evidence in support of the judgment. Without entering into a discussion of the evidence and the authorities cited, and from such examination, the court is of the opinion, in view of the circumstances of the

case and the age of the appellant, that the judgment is excessive, and that to do justice in this case the judgment should be modified and reduced to the sum of $9,000.

The judgment is therefore reduced to $9,000, and the petition is dismissed.

Ailshie, C. J., and Sullivan, J., concur.