# South Chicago City Ry. Co. v. Antoine Dufresne.

1. NEGLIGENCE—*Attempting to Get upon a Street Car in Motion.*— Whether it is negligence for a person to attempt to get upon a street car in motion depends upon the circumstances of the case, and is a question of fact for the determination of the jury.

2. EVIDENCE—*Of Customs, When Competent in Actions for Personal Injuries.*—In an action for personal injuries, it is competent for the plaintiff to show that it was customary, at the crossing where he was injured, for people to board the street cars while in motion, as bearing upon the question as to whether he was in the exercise of ordinary care for his personal safety.

3. DAMAGES—*Where $7,750 Is Not Excessive.*—A strong, healthy man, forty-seven years of age, a ship carpenter by trade, capable of earning from $3.50 to $7 per day, was injured in an accident on a street car and lost one of his hands in consequence, rendering him unable to work at his trade; a verdict for $7,750 is not excessive.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed June 23, 1902.

CHARLES C. GILBERT, attorney for appellant.

CHARLES M. HARDY, WILLIAM H. RICHARDSON and PLINY B. SMITH, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee for the sum of $7,750. The appellant operates street cars run by electricity, on Ewing avenue, in the city of Chicago, which is a north and south street. One Hundredth street is an east and west street and crosses Ewing avenue at right angles. The intersection of the two streets is crossed diagonally from southwest to northeast by the railroad tracks of the Baltimore & Ohio, Lake Shore & Michigan Southern and Pittsburg, Ft. Wayne & Chicago Railroad Companies, the tracks of the first named company being the most northerly and those of the last named the most southerly. Ewing avenue is eighty and 100th street 100 feet in width. The distance between the intersection of the center line of Ewing avenue with the most southerly rail of the P., Ft. W. & C. R. R. Co.'s tracks is thirty feet. Appellant has two car tracks in Ewing avenue, the west track being the south-bound one and the east track the north-bound one. These tracks are in about the center of the street. On the southwest corner of Ewing avenue and 100th street there is a hotel called the Ewing House. It fronts east on Ewing avenue, is about thirty feet in width and sets back from the street about sixteen feet. Its north side is coincident with the south line of 100th street.

Appellant's counsel contends that there is a variance between the declaration and evidence, because, he says, "Plaintiff attempted to show that he was a passenger, and there is no averment in the declaration that he was a passenger." We find no such variance, if variance it could be called. The averment in the declaration is, in substance,

that the plaintiff was, at the time of the accident, attempting to take passage on appellant's car. The accident occurred on Sunday, about 1:30 o'clock P. M., August 22, 1897. Appellee testified, in substance, that at the date mentioned he, with a number of others, was standing on the southwest corner of Ewing avenue and 100th street; that he was waiting for a car from the north, going south to Hammond, Indiana; that the car came; that it was an open car; that before the car stopped he jumped on the foot-board of the front car, and that, holding on to the posts of the car with his hands, he worked his way down on the foot-board to the center of the car, when a man in the car made room for him; that he then put his right foot inside the car, his left one being on the foot-board, when "the car started forward with a big jump" and threw him on the ground. The evidence is that the train consisted of a motor car, being that spoken of by appellee as the front car, and a trailer. Both cars were open, and had foot-boards running along their sides about twelve inches from the surface of the ground and about the same distance below the floors of the cars. The running-boards were used as steps in entering or leaving the cars. There were posts at short intervals at the sides of the cars, extending from the floor to the roof. The hind wheel of the motor passed over appellee's fingers, crushing them and necessitating the amputation of his hand.

Thomas F. Hayes testified that he was standing about fourteen or fifteen feet south of the corner of the Ewing House; that there was quite a number of young ball players waiting to get on the south-bound car, and appellee was in the crowd; that when he first noticed appellee, he was on the running-board, about the middle of the front car, and had hold of the supports with his hands, and that while he was stepping into the car it started and he fell; that at that time the rear end of the motor car was about opposite the Ewing House door.

Oscar Swanson testified, in substance, that he and Louis Ott and about eighteen others, were all going to a ball

game, and met at 100th street and Ewing avenue and that they got on the motor car, on the west side of the car, before it stopped; that Dufresne came up and got on the footboard toward the front end of the car and started working his way back toward the middle of the car, where he and Ott were, and that they got up and told him to get inside, and just as he was going to get in, the car gave a sudden jerk and he fell. Witness further testified that the car was south of the south walk of 100th street when appellee got on, and that it was still running.

Louis Ott testified that he and Swanson got on the west side of the motor car as it was crossing the Fort Wayne tracks; that Dufresne got on the running-board of the front car at the forward end; that, at that time, the rear end of the motor was in front of the Ewing House. In answer to the question, " Then what did he do?" the witness answered: " He seen there was no room there, no seats on the west side of the car, so he started working his way back, and there was no seat there, and Swanson and I, we saw him coming, and we made room; we got up out of our seat to let him pass to the east side of the car, and just then the car started up and it throwed him." The witness testified that the car started with " a sort of a sudden jerk;" also, that the car was moving " just a very little bit when appellee stepped onto the running board."

Louis Schapiro testified that he saw the accident; that the first he saw of Dufresne, he was on the running-board; that he had one foot in the air and his hand had hold of the handles, or uprights, and that " when he started to get in, the car lurched forward and he fell on his face;" and that when he fell he was about in front of the big door or entrance going into the Ewing House, which was about the center of the house, in front. On cross-examination of this witness, the following question was asked and answer given:

Q. " Just tell us what you mean, when you say the car lurched forward ?" A. " Started off with an awful jerk."

Saxe, another witness, testified to seeing appellee fall as the car " gave a jolt."

The evidence supports the averment of the declaration that appellee was "attempting to take passage on said car," and that he was "attempting to secure a seat or safe position on said car," and it is not a variance because, perhaps, it might have been claimed from the evidence that he was a passenger.   But appellant's counsel urge that it was incumbent on appellee to prove that he signaled for the car to stop.   It is not averred in the declaration that appellee gave any signal to the conductor or motorman to stop the car.   The averment in each count of the declaration is that he "then and there duly and sufficiently notified said defendant" of his intention to take passage on the car. We do not understand that it is necessary or customary for one desiring to take passage on a street car to ring a bell, sound a whistle or blow a horn.   The usual way is to stand, awaiting the car, at a place where it usually stops, when one desiring to board it may raise his hand or give some sort of sign; but it is sufficient if, in any way, the conductor or motorman has notice that a person wants to board the car. The evidence in the present case is, that the usual stopping place for the south-bound train in question was just south of the south line of 100th street; that there were twenty or more persons waiting for the car at the southwest corner of Ewing avenue and 100th street, appellee among them, and that appellant's employes in charge of the cars saw these people approaching the car to get on it, and saw some of them get on it.   This was notice enough, if, in view of the evidence, any notice was necessary.   The evidence is sufficient to warrant the conclusion that appellee got on the footboard of the car when the car was slightly moving.   There were in charge of the car a motorman and a conductor, and whether appellee was exercising ordinary care in so getting on, and whether the motorman would, in the exercise of ordinary care, have seen him get on, were questions for the jury to decide.

As is usual in cases like the present, there was conflicting evidence.   Appellant produced witnesses who testified that appellee ran toward the car, and that, in attempting to take

hold of it, he missed it and fell, and that he did not get on the foot-board at all.    There was also a conflict of evidence as to some other matters; but having read all the evidence with a great deal of care, we are satisfied that it warrants a recovery.

There was some evidence introduced by appellant tending to prove that appellee attempted to board the car on the railroad crossing, and on the cross-examination of appellant's motorman and conductor of the first car, evidence was given by them, in response to questions by appellee's attorney, tending to prove that it was customary, at that crossing, for people to board the cars while in motion, and that they knew this.    This evidence was objected to as incompetent, because the declaration contains no averment of such custom.    The evidence was competent, as bearing on the question whether appellee exercised ordinary care. N. C. St. R. R. Co. v. Kaspers, 186 Ill. 246, 248.

Counsel makes some claim, but rather feebly, that appellee was intoxicated, but the evidence is to the contrary.

Appellant's counsel object to instructions given on behalf of the appellee, and also that the damages are excessive. We find no reversible error in the instructions criticised by counsel.    Appellee was forty-seven years old at the time of the accident.    He testified that prior to the accident he had always been a strong man, and had never been sick; that he was, by trade, a ship carpenter and caulker, and had worked at that trade for thirty years in various ship yards, and had earned at his trade from $3.50 to $7 per day, and that since he lost his hand he was unable to work at his trade.    So that appellee, a strong, healthy man of forty-seven years of age, was by the accident in question, deprived of that means of earning a livelihood which he had enjoyed for thirty years.    We can not say that the damages are excessive.

The judgment will be affirmed.