## OTTO WYMAN v. WILLARD C. PIKE and Another.[1]

### July 23, 1909.

### Nos. 16,169—(183).

**Evidence Sustains Verdict.**

> In this, a personal injury case, it is *held* that the evidence sustains a verdict for the plaintiff for $4,000 damages on account of injuries to his head caused by the negligence of the defendants.

Action in the district court for Hennepin county to recover $15,000 for personal injuries. The case was tried before Dickinson, J., and a jury which rendered a verdict in favor of plaintiff for $4,000. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*Brown, Albert & Guesmer,* for appellants.

*Gjertsen & Lund,* for respondent.

[1]Reported in 122 N. W. 310.
        108 M.—31.

START, C. J.

The plaintiff herein, who was forty-eight years old, and a carpenter earning $3.40 per day prior to his injury, was, on November 8, 1907, in the employ of the defendants, who were then engaged as builders and contractors in the construction of the Catholic Procathedral in the city of Minneapolis. The work assigned to him was the making and repairing of wooden forms to be used in placing the concrete. Near by, the defendants had erected and were operating a wooden derrick for the hoisting and placing of concrete material by means of a bucket, having a capacity of a cubic yard of concrete, hung from the boom of the derrick and carried by it, when loaded, to the point where the concrete was to be used. On the day named the plaintiff was engaged in putting some braces between the forms into which concrete was to be poured. The bucket, with concrete in it, was being swung by the boom, when the derrick broke and fell, the boom striking some planks, which knocked the plaintiff down, whereby he was seriously injured.

This action was brought by the plaintiff in the district court of the county of Hennepin to recover damages for the injuries so sustained, on the alleged ground that they were caused by the defendants' negligence. The negligence alleged in the complaint was to the effect that the woodwork of the derrick, especially the left leg or brace thereof, was rotten, out of repair, and of insufficient strength, which caused the derrick to fall, whereby the plaintiff was injured. The answer denied that plaintiff's injuries were caused by any negligence on the part of the defendants. The issue was submitted to the jury, and a verdict returned for the plaintiff for $4,000. Defendants appealed from an order denying their alternative motion for judgment or a new trial.

The record presents for our consideration only the question whether the evidence sustains the verdict. The rule res ipsa loquitur does not apply to this case, and the burden was upon the plaintiff to establish the alleged negligence of the defendants and that it was the proximate cause of his injury. The evidence is amply sufficient to establish the fact that the derrick was rotten and of insufficient strength; that the defendants might have ascertained its condition by the exercise of due care; and, further, that they were negligent in using it in its defective condition.

The only fairly debatable questions arising upon the evidence relate to the cause of the accident and the amount of damages awarded. The claim of the defendants is that the fall of the derrick and the resulting injury were caused by overloading the bucket with concrete by the negligence of a fellow servant, contrary to the orders of the defendants. The trial court submitted the question to the jury, with the express direction that, if they found that the fall of the derrick was caused by the disobedience of orders as to the filling the bucket by the man who was loading the bucket, then their verdict must be for the defendants. The verdict for the plaintiff necessarily includes a finding that the fall of the derrick was not caused by overloading the bucket.

The trial judge, in denying the motion for a new trial, approved this finding as sustained by the evidence; but counsel for defendants claim in their brief that it appears without dispute that at the time of the accident the bucket was loaded to its full capacity, and refer us, in support of the claim, to folios 51, 173, 564, 572, and 1053 of the record. The first and fourth relate to the testimony of August Gustafson, which is as follows:

"Q. Do you know how much it would carry—how much concrete? Was it a large or small bucket? A. It was large. Q. A large bucket? A. Yes; yes, sir. Q. At the time when the derrick broke and fell, was there a loaded bucket on the arm? A. Yes. * * * Q. You noticed the bucket coming around? I say, you noticed the bucket coming around? A. No; I didn't look at it all the time. Q. I don't mean all the time. You saw the bucket stopped? A. Yes. Q. And you told Mr. Gjertsen that the bucket was full of concrete? A. No; I haven't said anything about that. Q. I understood you to say that it was full of concrete. Mr. Gjertsen: Olson said it was full. Mr. Brown: Well, was it Olson? I thought he was the man. Mr. Olson testified that it was full of concrete? Mr. Gjertsen: They all said it was loaded. Mr. Brown: But Olson said it was full. Mr. Gjertsen: Yes. Mr. Brown: All right. That is all."

The second and third relate to the testimony of John Olson, which was this: "* * * Q. Now, counsel asked you in regard to the weight of these two arms when the derrick was in operation. This

derrick, you say, came with a loaded bucket? A. Yes, sir.  *  *  *
Q. At the time when the boom fell, the bucket was loaded with con-
crete? A. Yes, sir; it was. Q. As I understand you, the bucket was
substantially full of concrete? A. It was off a ways. I couldn't say
substantially full; but it's always full when I see it. Q. But on this
occasion it was full? A. Well, I couldn't say. It was swinging, and
I was quite a distance. But, standing there, you could see it loaded.
As a general rule, it was always full, when I observed the bucket."

The last reference has no relation to the condition of the bucket
when the derrick fell, but to the order given by one of defendants to
their foreman to the effect that the bucket should be only half filled
with concrete. This is all the evidence upon which the claim is made
that it conclusively appears that the bucket was loaded to its full
capacity. The fair import of Gustafson's testimony is that the bucket
was loaded at the time of the accident—that is, it was not empty—
and of Olson that the bucket was loaded, whether it was full at the
time he could not say, but as a general rule, when he observed it, the
bucket was always full. It is quite apparent that counsel for plain-
tiff had reference to this testimony when he admitted that "Olson said
it was." It is obvious that the finding of the jury that the fall of the
derrick was not caused by overloading the bucket is not contrary to
the undisputed evidence. It was a fair question for the jury upon
the evidence.

The verdict, then, eliminates the overloading of the bucket as a
cause of the fall of the derrick, leaving only the question whether the
finding of the jury that it was caused by its rotten condition and in-
sufficient strength is supported by the evidence. The claim of the
defendants is that, if the overloading the bucket be eliminated, the
cause of the fall of the derrick is left by the evidence a mere matter
of conjecture and speculation. If this be true, the verdict must be
set aside. We have accordingly attentively considered the record with
reference to this claim, and have reached the conclusion that this
finding of the jury is also sustained by the evidence.

The last contention of the defendants is that the damages are so ex-
cessive as to indicate that they were given under the influence of pas-
sion or prejudice. The evidence on the part of the plaintiff tends to

show that he was knocked senseless by the blows he received and did not recover consciousness until after he was taken to the hospital; that he was then bleeding from a wound on the left side of his head and from one on the front of his head; the skull was not fractured, but all the tissues were cut down to the bone, which was depressed; he received a blow on the left eye, and a severe one back of his left ear upon the mastoid process, and another blow over his ribs which rendered it difficult for him to breathe and developed pleurisy; that as a result of his injuries his nervous system has been seriously impaired, his eyesight injured, and hearing impaired; that at the time of the trial he was troubled with shooting pains through his head, making him dizzy, and he was suffering from a general nervous breakdown, which has prevented him from doing any work since his injury; that he was sound mentally and physically before his injury, and earning $85 a month; that his loss of wages and bills incurred for medical attendance up to the date of the trial aggregated some $1,700; and, further, that the chances are against his permanent recovery from the results of the injury to his head. On the other hand, there was evidence on the part of the defendants tending to show that the plaintiff's injuries were not permanent, nor specially serious, which is made the basis of a claim that he was malingering.

We are of the opinion that the award of damages is not excessive, and that it is fairly sustained by the evidence, taking, as we must, the most favorable view of it for the plaintiff.

Order affirmed.