(No. 6115.   December 18, 1934.)

SIDNEY G. ROY, Respondent, v. OREGON SHORT LINE RAILROAD COMPANY, a Corporation, Appellant.

[42 Pac. (2d) 476.]

406

George H. Smith and H. B. Thompson, for Appellant.

Peterson, Anderson & Bowen and Milton E. Zener, for Respondent.

GIVENS, J.—Respondent was a fieldman of a switching crew employed by appellant in its yards. Cars shunted onto track No. 5, collided with another car previously switched thereon. Respondent claims a piece of coal was, because of excessive speed, bumped out of the cars, hitting him and knocking him down and under the cars, which ran over his left arm severing it above the wrist, necessitating the removal of the hand and a part of the forearm, below the elbow.

Under the Federal Employers' Liability Act, section 51, title 45, U. S. C. A., respondent charged negligent switching and handling of the cars at high speed, overloading and failure to keep a lookout as to where the first car had stopped on track No. 5. Appellant denied negligence and urged contributory negligence.

In this appeal from the ensuing judgment of $35,000, entered on a like verdict, appellant first assigns as error the overruling of its objections to questions asked respondent's wife as to whether respondent indicated by his conversation that he was in pain during the time he was in the hospital, to which she answered "Yes," and in over-

ruling appellant's objection as to what she observed, as violating the hearsay rule because plaintiff had time and opportunity to deliberate before such statements.

"Testimony as to expressions of a natural and spontaneous character, indicating present bodily pain, is competent as original evidence; but the declarations of an injured party as to his past feelings and suffering, or which are not voluntary exclamations of existing pain and suffering are, mere hearsay, and should be rejected." (*Sly v. Powell*, 87 Kan. 142, 123 Pac. 881, 883.)

The evidence was admissible. (*Alabama Great Southern R. Co. v. Molette*, 207 Ala. 624, 93 So. 644; *Chicago, R. I. & P. Ry. Co. v. Isom*, 136 Ark. 624, 203 S. W. 271; *Mielke v. Dobrydnio*, 244 Mass. 89, 138 N. E. 561; *San Angelo Water, Light & Power Co. v. Baugh*, (Tex. Civ. App.) 270 S. W. 1101; 3 Jones' Commentaries on Evidence, pp. 2226 and 2231; *Nichols v. Kluver*, 61 N. D. 42, 237 N. W. 640.)

Bowen, a witness for appellant, was asked whether the respondent had stated to him that a previous injury to his fingers would bar him from work on any "class one railroad" in the United States. The court sustained respondent's objection of immateriality. No sufficient foundation was laid for this question, showing what a "class one railroad" was, or if there was in fact such a thing in existence. Mr. Bowen stated that he did not know what a "class one railroad" was, thus the ruling was not erroneous. (22 C. J. 300.)

Appellant has withdrawn its objection to the failure to give requested instruction No. 3 and the alleged failure to instruct on the preponderance of the evidence; therefore it will not be considered.

Appellant complains of the refusal of the trial court to give its requested instruction No. 5, to the effect that respondent assumed the risk of a negligent method of operation of appellant, of which he knew or which was so apparent and obvious that he was charged with notice of it. The court instructed: " . . . . the employee must exercise ordinary care to discover unexpected and extraordinary

risks . . . . ,'' which comes within the rule announced by the courts. (*Fox v. Lehigh Valley R. Co.*, 292 Pa. 321, 141 Atl. 157; *King v. Norfolk-Southern R. Co.*, 176 N. C. 301, 97 S. E. 29, *certiorari* denied 249 U. S. 599, 39 Sup. Ct. 257, 63 L. ed. 795; Roberts, Federal Liabilities of Carriers, sec. 831; note 24, title 45, sec. 54, U. S. C. A.)

■ Appellant assigns as error the refusal to give requested instruction No. 6, placing on respondent the duty of establishing by a preponderance of the evidence that he did not assume the ordinary obvious risks of his employment. Respondent did not attempt herein to prove that he did not assume such burden, but sought to recover for negligence charged outside of any risk which he may have assumed.

*Kanawha & M. R. Co. v. Kerse*, 239 U. S. 576, 36 Sup. Ct. 174, 60 L. ed. 448, 39 C. J. 1000, and note 105, Title 45, sec. 54, U. S. C. A., place the burden on the employer. Appellant contends that there is a distinction as to the burden of proof between ordinary risks and extraordinary risks, but the authority which it cites to establish this contention is based upon the following theory:

"As the doctrine which charges every adult servant with an acceptance of the ordinary risks of his employment rests, in part at least, upon the presumption which is entertained that he comprehends all those risks (see § 1168, subd. a, *ante*, it is clear that, wherever such servant has been injured owing to the existence of a *risk of this character, and seeks to recover on the ground that he did not appreciate it,* he has the burden of showing that such appreciation was not predicable under the given circumstances. (From another point of view, to say that the servant has the burden of proving that he was not injured by one of the ordinary risks of the service is but another way of saying that he has the burden of proving that he was injured by the master's negligence; since the ordinary risks of the service are those only which remain after the master has exercised ordinary care to remove them." (Labatt's, Master & Servant, 2d ed., sec. 1608.) (Italics ours.)

Respondent does not seek to recover upon the ground that he did not *appreciate an ordinary risk,* but upon the ground that this was an extraordinary risk of which he was not aware, and since under the instruction given " . . . . the employee must exercise ordinary care to discover *unexpected and extraordinary* risks . . . . ," appellant was not prejudiced. (Italics ours.)

Appellant urges the court erred in refusing to withdraw from the jury the negligent loading or overloading of the coal cars, because of lack of evidence relative thereto. The respondent alleged that the injury and damage he sustained "was directly caused by and approximately contributed to by the negligence and carelessness of" appellant. That general allegation of negligence and carelessness was followed by allegations of specific acts of negligence and carelessness, touching the same subject matter, it being alleged that appellant was negligent and careless, "In the throwing of said cars together in the night without observing where said car had stopped with which they collided with violence as before stated; in negligently and carelessly and with excessive speed throwing said cars together and in negligently and carelessly loading and permitting. the loading and conveying while so loaded, said coal cars in such manner that large quantities of coal would, could and did become dislodged from said load and to fall therefrom, and said defendant was negligent and careless in the carrying of, handling and hauling of said coal cars while so negligently and carelessly overloaded and while in such condition that a blow or bump would cause quantities of said coal to fall therefrom."

There is a conflict in the evidence as to the speed at which the coal cars, while being "switched," collided with the car of coal standing still. Respondent fixes the speed of the coal cars at from eighteen to twenty miles an hour, while the other members of the switching crew testified that the speed was from six to eight miles an hour, and that the said cars of coal being "switched," and the said car of coal standing still, came together with unusual speed.

It was for the jury to say whether if the said cars of coal had been "switched" with reasonable care and speed and/or if said cars of coal had been properly and not negligently loaded, the lump of coal "as large as a big dictionary" would or would not have been thrown therefrom with sufficient force to knock, or did knock respondent under the moving cars and/or that the accident would not have so occurred. Therefore, that issue was properly submitted to the jury.

It is contended that the verdict is excessive and that the exhibition of respondent's arm together with certain allegedly improper remarks of counsel was such as to strongly and improperly excite the sympathies of the jury. The exhibition of the arm, though unnecessary, since the nature of the injury was admitted, was not so improper as to be prejudicial. (22 C. J. 788, 789; *Stephens v. Elliott,* 36 Mont. 92, 92 Pac. 45; *City of Topeka v. Bradshaw,* 5 Kan. App. 879, 48 Pac. 751; *Bowerman v. Columbia Gorge Motor Coach System,* 132 Or. 106, 284 Pac. 579; *Sears v. Goldsmith,* 136 Or. 151, 298 Pac. 219; *Cook v. Danaher Lumber Co.,* 61 Wash. 118, 112 Pac. 245; *Cunningham v. Union Pac. Ry. Co.,* 4 Utah, 206, 7 Pac. 795; *Dunkin v. City of Hoquiam,* 56 Wash. 47, 105 Pac. 149; *Faras v. Lower California Development Co.,* 27 Cal. App. 688, 151 Pac. 35; *Zelhaver v. Koepke,* 260 Mich. 428, 245 N. W. 490; *Kansas City M. & O. Ry. Co. of Texas v. Foster,* (Tex. Civ. App.) 38 S. W. (2d) 391.)

While the remarks of respondent's counsel in his argument to the jury were excepted to, no ruling by the court was asked or made. Under these circumstances no action of the trial court is thus questioned or here for review (*Scott v. Times-Mirror Co.,* 181 Cal. 345, 184 Pac. 672, 12 A. L. R. 1007; *Kershaw v. Tilbury,* (Cal. App.) 2 Pac. (2d) 389; Id., 214 Cal. 679, 8 Pac. (2d) 109), unless an admonition or instruction by the court would have been unavailing to cure the error, if any, of such remarks. The remarks excepted to were as follows:

" 'Mr. Thompson has suggested that the plaintiff came here to commit perjury with a framed case, with colored glasses and with an eye shade which he later removed,' and said Joseph H. Peterson, counsel for the plaintiff, further stated to the jury, that said plaintiff took the eye shade off and took the cap off because said Joseph H. Peterson had told him to do so'';

" . . . . plaintiff's counsel stated that the plaintiff upon the witness stand had waived privilege as to Dr. Newton, Dr. Pond, Dr. Jones and Dr. Lynn,''

The record does not show that the respondent waived his privilege as to Dr. Newton, Dr. Pond, Dr. Jones or Dr. Lynn, and there was no evidence as to why the plaintiff took the eye-shade and cap off or at whose instigation.

The situation here is sufficiently comparable to that discussed in *Cochran v. Gritman*, 34 Ida. 654, 203 Pac. 289, to lead to the conclusion that an instruction or admonition if requested and given would have cured the error, if any; hence the situation does not in the absence of such request call for reversal. (1 Thompson on Trials, par. 962, p. 807.)

The respondent at the time of the accident was nearly thirty-one years of age, his wage was $5.96 per day, he had earned for the past one and one-half years less than $1,000 per year. Though disabled by the loss of one hand and a portion of his arm, together with alleged headaches, insomnia and continuing pains, and injury to the head, yet it would appear that he still possessed some earning capacity.

We have collected all the cases referring to the loss of a hand or arm which we have been able to find having analogous features. Omitting discussion of those referred to in *Chesapeake & O. Ry. v. Arrington*, 126 Va. 194, 101 S. E. 415, in the following cases the amounts indicated have been held not excessive,[1] held excessive and reduced or al-

[1] $16,000.00.—*Quinn v. Chicago, M. & St. P. Ry. Co.*, 162 Minn. 87, 202 N. W. 275, 46 A. L. R. 1228.

$15,000.00.—*Madole v. Chicago, R. I. & P. Ry. Co.*, 161 Minn. 535, 201 N. W. 937; *Gilland v. Carolina Crushed Stone Co.*, 189 N. C. 783, 128 S. E. 158; *Caldwell v. Payne*, (Mo. Sup.) 246 S. W. 312; *Pless*

lowed to stand as remitted,[2] held not excessive after reduc-

*v. New York Cent. R. Co.*, 189 App. Div. 261, 179 N. Y. Supp. 578; *White v. Chicago, M. & P. S. Ry. Co.*, 49 Mont. 419, 143 Pac. 561.

$13,750.00.—*Larson v. Great Northern Ry. Co.*, 153 Minn. 9, 189 N. W. 423.

$13,500.00.—*Freeman v. Grashel,* (Tex. Civ. App.) 145 S. W. 695; *St. Louis, S. F. & T. Ry. Co. v. Ussery,* (Tex. Civ. App.) 259 S. W. 275.

$13,154.00.—*Kelley v. Chicago, B. & Q. R. Co.*, 142 Minn. 44, 170 N. W. 886.

$11,000.00.—*Galveston, H. & S. A. Ry. Co. v. Courtney,* 30 Tex. Civ. App. 544, 71 S. W. 307.

$10,000.00.—*Union P. R. Co. v. Young,* 19 Kan. 488; *Kenna v. Calumet, H. & S. E. R. Co.*, 206 Ill. App. 17; judgment affirmed, 284 Ill. 301, 120 N. E. 259; *Brink v. Kessler,* 310 Pa. 506, 165 Atl. 836.

$8,454.56.—*Smith v. Hines,* 119 Me. 442, 111 Atl. 761.

$8,416.66.—*Missouri, K. & T. Ry. Co. of Texas v. Box,* (Tex. Civ. App.) 93 S. W. 134.

$8,000.00.—*Chicago, A. R. Co. v. Wilson,* 63 Ill. App. 167, 9 Am. Neg. Cases, 252; *Illinois C. R. Co. v. Harris,* 63 Ill. App. 172; affirmed, 162 Ill. 200, 44 N. E. 498; *Continental Oil & Cotton Co. v. Gilliam,* (Tex. Civ. App.) 151 S. W. 890.

$7,500.00.—*South Chicago City R. Co. v. Dufresne,* 102 Ill. App. 493; affirmed, 200 Ill. 456, 65 N. E. 1075; *Sprague v. Atlee,* 81 Iowa, 1, 46 N. W. 456; *Cincinnati, H. & D. R. Co. v. Criss,* 15 Ohio C. C. 398, 7 Ohio C. D. 632; *Tatum v. Crescent Laundry Co.*, 201 Mo. App. 97, 208 S. W. 139.

$6,500.00.—*Wooster v. Western New York & P. R. Co.*, 61 Hun, 623, 40 N. Y. Supp. 844, 16 N. Y. Supp. 764; affirmed, 135 N. Y. 617, 32 N. E. 645.

$6,000.00.—*Crosby v. Cuba R. Co.*, 158 Fed. 144; affirmed, 95 C. C. A. 539, 170 Fed. 369; reversed on other grounds, 222 U. S. 473, 32 Sup. Ct. 132, 56 L. ed. 274, 8 L. R. A., N. S., 40; *Cincinnati, N. O. & T. P. Ry. Co. v. Davis,* 293 Fed. 481.

$5,000.00.—*Houston & T. C. R. Co. v. Pinto,* 60 Tex. 516.

$4,000.00.—*Withcofsky v. Wier,* 32 Fed. 301; *Michigan C. R. Co. v. Waterworth,* 21 Ohio C. C. 495, 11 Ohio C. D. 621.

$3,500.00.—*Norfolk & W. R. Co. v. Ampey,* 93 Va. 108, 25 S. E. 226.

$1,000.00.—*McMillan v. Union Press-Brick Works,* 6 Mo. App. 434.

2 $25,000.00 to $18,000.00.—*Alabama & V. Ry. Co. v. Dennis,* 128 Miss. 298, 91 So. 4.

$21,000.00 to $17,000.00.—*Gordon v. Muehling Packing Co.*, 328 Mo. 123, 40 S. W. (2d) 693.

tion by the trial court as indicated,[3] held excessive after reduction by the trial court and further reduced.[4]

With reference to head injuries, producing dizziness, nervousness, headaches and insomnia, etc., we have noted the cases collected in 17 C. J. 1095, and in the following cases the amounts stated have been held not excessive,[a] held

$25,000.00 to $15,000.00.—*Mattice v. Terminal R. R. Assn.*, (Mo. Sup.) 270 S. W. 306.

$25,000.00 to $15,000.00.—*Radler v. St. Louis-San Francisco Ry. Co.*, 330 Mo. 968, 51 S. W. (2d) 1011; *Baker v. Bell*, (Tex. Civ. App.) 219 S. W. 245.

$20,000 to $12,500.00.—*Verde Tunnel & Smelter Ry. Co. v. Stevenson*, 22 Ariz. 188, 196 Pac. 164.

$15,000.00 to $12,500.00.—*Wolfe v. Payne*, 294 Mo. 170, 241 S. W. 915.

$18,000.00. to $12,000.00.—*Wagner v. Gilsonite Const. Co.*, (Mo. Sup.) 220 S. W. 890.

$15,000.00 to $12,000.00.—*Brown v. Illinois Terminal Co.*, 237 Ill. App. 145; *Leighton v. Davis*, (Mo. App.) 260 S. W. 986.

$17,000.00 to $10,000.00.—*Grange v. Chicago & E. I. Ry. Co.*, (Mo.) 69 S. W. (2d) 955.

$15,000.00 to $10,000.00.—*Scheu v. Pennsylvania Ry.*, 141 Fed. 495.

$12,000.00 to $8,000.00.—*Young v. Lusk*, 268 Mo. 625, 187 S. W. 849.

$8,000.00 to $6,000.00.—*Murray v. Hudson River R. Co.*, 47 Barb. (N. Y.) 196; affirmed, 48 N. Y. 655.

[3] $19,000.00 to $15,000.00.—*Stone v. City of Pleasanton*, 115 Kan. 378, 223 Pac. 312.

$18,000.00 to $14,000.00.—*Hayes v. Wabash R. Co.*, 180 Ill. App. 511.

$17,400.00 to $10,000.00.—*Lewis v. Northern Pac. Ry. Co.*, 36 Mont. 207, 92 Pac. 469.

$8,000.00 to $6,000.00.—*Pittsburgh & L. E. R. Co. v. Blair*, 11 Ohio C. C. 579, 5 Ohio C. D. 366, reversed on other grounds, 55 Ohio St. 689, 48 N. E. 1110.

[4] $12,000.00 reduced by trial court to $10,000.00, further reduced to $4,000.00.—*Brown v. Southern Pac. R. Co.*, 7 Utah, 288, 26 Pac. 579.

$15,000.00 reduced by trial court to 10,000.00, then held excessive.—*O'Donnell v. American Ref. Co.*, 41 App. Div. 307, 58 N. Y. Supp. 640.

[a] $8,000.00.—*Di Marco v. Chicago & Riverdale Lumber Co.*, 220 Ill. App. 354.

$7,000.00.—*Dolan v. Sierra Ry. Co.*, 135 Cal. 435, 67 Pac. 686.

excessive and reduced or allowed to stand as remitted,[b] held not inadequate.[c]

In *Stone v. City of Pleasanton*, 115 Kan. 378 (1924), 223 Pac. 312, the court said:

$5,000.00.—*Wilhelm v. Brooklyn Q. C. & S. R. Co.*, 32 App. Div. 637, 52 N. Y. Supp. 1090.

$4,000.00.—*Wyman v. Pike*, 108 Minn. 481, 122 N. W. 310.

$3,500.00.—*Birmingham v. Rochester City & B. R. Co.*, 63 Hun, 635, 18 N. Y. Supp. 649.

$3,250.00.—*Griffiths v. Clift*, 4 Utah, 462, 11 Pac. 609.

$3,000.00.—*Shewbridge v. Chicago City R. Co.*, 188 Ill. App. 454; *Sand Springs Ry. Co. v. Smith*, 84 Okl. 211, 203 Pac. 207; *Gordon v. Bleeck Automobile Co.*, (St. L. Ct. of App. Mo.) 233 S. W. 265.

$2,625.00.—*St. Louis, I. M. & S. Ry. Co. v. Baker*, 67 Ark. 531, 55 S. W. 941.

$2,500.00.—*Guderitz v. Boadway Bros.*, 39 Cal. App. 48, 177 Pac. 859; *Boyd v. Husted*, 3 N. J. Misc. 225, 127 Atl. 667.

$2,000.00.—*Klein v. Phelps Lumber Co.*, 75 Wash. 500, 135 Pac. 226; *Anderson v. American Sash & Door Co.*, (Kansas City Ct. of App. Mo.) 182 S. W. 819.

$1,800.00.—*Bridge v. City of Oshkosh*, 71 Wis. 363, 37 N. W. 409.

$1,750.00.—*Grignon v. Minneapolis & St. L. R. Co.*, 130 Minn. 36, 153 N. W. 117.

$1,700.00.—*Ohio Valley Electric Ry. Co. v. Webb*, 202 Ky. 341, 259 S. W. 697.

$1,500.00.—*Lindley v. Knowlton*, 46 Cal. App. 653, 189 Pac. 798; *Fishback v. Dunham*, (Kansas City Ct. of App. Mo.) 203 S. W. 217.

$1,000.00.—*Bowman v. Marceline Coal & Mining Co.*, 168 Mo. App. 703, 154 S. W. 891; *Springfield Cons. Co. v. Johnson*, 134 Ill. App. 536.

[b] $5,000.00 to $3,000.00.—*Briscoe v. Metropolitan St. Ry. Co.*, 222 Mo. 104, 120 S. W. 1162.

$5,000.00 to $2,500.00.—*Knutson v. Moe Bros.*, 72 Wash. 290, 130 Pac. 347.

$3,000.00 to $2,000.00.—*Chicago City Ry. Co. v. McCaughna*, 117 Ill. App. 538.

$2,250.00 to $1,250.00.—*Harkins v. Rhode Island Co.*, (R. I.) 69 Atl. 335.

[c] $500.00—*Quenrud v. Moore-Sieg Const. Co.*, 191 Iowa, 580, 181 N. W. 16.

$400.00.—*Marcus v. Omaha & C. B. Ry. & Bridge Co.*, 142 Iowa, 84, 120 N. W. 469.

"It is urged that the verdict was excessive. As a result of the injuries received by the plaintiff, one of his arms was amputated between the elbow and the wrist; a large scalp wound was received upon which the hair cannot grow again; and he received a large burn on one of his shoulders and another large one on one of his legs. There was evidence which tended to show that 216 square inches of skin were taken from ten other boys and grafted on the plaintiff. But the court is of the opinion that the verdict was excessive.

"Because the verdict was excessive, the judgment is reduced to $15,000 (from $19,000) if the plaintiff will accept that amount. If he declines a new trial is granted."

In *Chicago, R. I. & P. Ry. Co. v. Batsel,* 100 Ark. 526, 140 S. W. 726, where the plaintiff sustained a rupture, his left arm was crushed so as to require amputation, he was painfully injured about the head and his earning capacity was reduced to one-fourth of what it had been prior to the accident; the trial court had erroneously admitted evidence that the plaintiff was married and that his family consisted of nine members, the court held that a verdict of $17,000 was excessive, and ruled that it would be allowed to stand only on remission of $10,000.

"In such case as this, where the amount of the verdict is attacked because it is so unusual, it is proper to make comparisons with the verdicts which other juries have found in other cases for similar injuries; for, while each case must be determined by its own facts, it is nevertheless true that the verdicts of other juries, which have been approved by the courts, represent the common or average judgment of mankind as to the proper recovery in such cases. Of course, these verdicts show a very wide difference of opinion, growing out of the circumstances of the different cases. There is a collection of comparatively recent cases in 17 Corpus Juris, at page 1102. It is there shown that out of nine cases for the loss of an entire arm, verdicts ranging from a minimum of $6,000 to a maximum of $25,000, including two for $25,000, the average is $16,277, and all of these verdicts were held to be excessive and were either set aside or

materially reduced. These cases come from Michigan, Montana, Illinois, Pennsylvania, New York, Kentucky, Missouri, and Iowa, thus covering many sections of the country. Upon the same page of 17 Corpus Juris, there are a large number of cases cited, in which the damages for similar injuries were held not to be excessive. Twenty-three of these verdicts (including that in *Norfolk & W. Ry. Co. v. Ampey,* 93 Va. 137, 25 S. E. 226, where the verdict was for $3,500.00) are below $10,000. Omitting them from the calculation, and taking only the other twenty-six cases in which the verdicts are far above the average in amount, notably one for $32,500, the next highest being for $17,500, the average of these verdicts held not excessive appears to be $13,003.

"The case in which the verdict of $32,500 was sustained is *Roeder v. Erie Railroad Co.,* (Sup.) 164 N. Y. Supp. 167. In that case the arm of the plaintiff was crushed off at the shoulder. His age and position are not stated, but it is said that but for the injury he would have been able to earn during the rest of his life the sum of $44,000, estimated on the basis of his wages at the time he was hurt. It is also said that in determining whether a verdict for personal injury is excessive, it is important to determine the present purchasing power of money. So far as we are advised, the case stands alone, and no verdict approaching this amount for such an injury has ever been sustained by any other court. (This court feels that the case of *Bryant v. Illinois Cent. R. Co.,* 252 Ill. App. 428, comes within the same category.)

"In all these cases there was the absolute loss of the arm. In this case the plaintiff lost his forearm, and these cases are therefore pertinent: *Knock v. Tonopah, etc., R. Co.,* 38 Nev. 143, 145 Pac. 939, L. R. A. 1915F, 3, in which a plaintiff 29 years of age with 11 year's experience in railroading in various positions, and earning on an average of $170 a month as conductor and brakeman. There was a verdict for $25,500 for the loss of his right forearm, which necessitated an amputation below the elbow. In that case there

are a number of citations relating to damages in such cases. The court reduced the verdict to $15,000, being of opinion that it was excessive. *Bradbury v. Chicago etc. R. Co.*, 149 Iowa 51, 128 N. W. 1, 40 L. R. A. (N. S.) 684, in which a brakeman 24 years old, earning $80 to $85 per month, with a life expectancy of 39½ years, was awarded $15,000 by the jury. His right arm had been amputated about two inches below the elbow. In that case the court reduced the verdict to $12,000. . . . .

"They were authorized if they believed the plaintiff was entitled to recover, to allow such a sum as would fairly compensate him for his physical pain, and also such a sum as if paid now would be a fair compensation to the plaintiff for diminished capacity to labor and earn wages in the future, and in that connection they were authorized to take into consideration the probable duration of the plaintiff's life. The amount allowed, $30,000, if invested at 6 per cent interest, would yield $1,800 a year, which was more than the amount the plaintiff was earning at the time he was injured, and would have supplied him with that income during his life and left him with an estate of $30,000 at his death, which is greater in amount than the average man of industry and intelligence accumulates in a lifetime. If they made this allowance upon the theory that he was entitled to a sum which, properly invested, would yield him an amount annually equal to his past or expectant wages during his life, leaving the principal undiminished for his estate at his death, and without considering the fact that his earning capacity, while lessened, was not wholly destroyed, then, according to all the authorities they erred.

"In *Chesapeake & O. Ry. v. Kelly*, [241 U. S. 485, 36 Sup. Ct. 630, 60 L. ed. 1117, L. R. A. 1917F, 367] *supra*, this is said:

" 'So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self-evident that a given sum of money

in hand is worth more than the like sum of money payable in the future. Ordinarily a person seeking to recover damages for the wrongful act of another must do that which a reasonable man would do under the circumstances to limit the amount of the damages. *Wicker v. Hoppock,* 6 Wall. 94, 99, 18 L. ed. 752, 753; *The Baltimore,* 8 Wall. 377, 387, 19 L. ed. 465; *United States v. Smith,* 94 U. S. 214, 218, 24 L. ed. 115; *Warren v. Stoddart,* 105 U. S. 224, 229, 26 L. ed. 1117, 1120; *United States v. United States Fidelity & G. Co.,* 236 U. S. 512, 526, 35 Sup. Ct. 298, 59 L. ed. 696, 703. And the putting out of money at interest is at this day so common a matter that ordinarily it cannot be excluded from consideration in determining the present equivalent of future payments, since a reasonable man, even from selfish motives, would probably gain some money by way of interest upon the money recovered.' *Houston etc. R. Co. v. Willie,* 53 Tex. 318, 37 Am. Rep. 757.

"If in estimating the plaintiff's damages they failed also to take into consideration that he was 42 years of age and that his earnings from manual labor would naturally diminish because of his advancing years long before he lived out his life expectancy, then they also erred. *Florida etc. Ry. Co. v. Lessiter,* 58 Fla. 247, 50 So. 428, 19 Ann. Cas. 196; Shearman & Redfield on Negligence, sec. 760, p. 2009.

"This court, in *Southern Ry. Co. v. Smith,* 107 Va. 553, 59 S. E. 372, where the plaintiff was thrown under an engine which crushed and destroyed his arm allowed a recovery of $15,000, which so far as we are advised is the largest amount ever recovered in this state for such an injury.

"In the Virginia cases, *Chesapeake & O. Ry. Co. v. Swartz,* [115 Va. 723, 80 S. E. 568] *supra,* in which this court sustained a verdict for $17,000 for loss of a leg, and *Chesapeake & O. Ry. Co. v. Carnahan* [118 Va. 46, 86 S. E. 863], *supra,* in which a verdict for $25,000 for a similar injury was sustained, there were peculiar circumstances, chiefly the fact that in neither case had the plaintiff, at the time of the trial, recovered from the immediate effects of the in-

jury, but in both these cases they were still suffering from their unhealed wounds. In this case no such peculiar circumstances exist. There is no evidence that the plaintiff's wound had failed to heal, and he is not wholly disabled. Many occupations are still open to him and while, if entitled to recover, he is entitled to proper compensation, he is not entitled to excessive damages.

"In *Norfolk Southern Railroad Co. v. Crocker,* 117 Va. 327, 84 S. E. 681, where a verdict for $18,000 for the loss of a leg was sustained, it appeared that the plaintiff suffered intensely and for a long period, and that his medical and other expenses amounted to $3,000 or more. ·

"As we are of opinion that under the circumstances of this case these damages are excessive, and also that the court erred in refusing to give the defendant's instruction D, or some equivalent thereof, the judgment will be reversed, and the case remanded for a new trial in accordance with the views here expressed." (*Chesapeake & O. Ry. Co. v. Arrington,* (Va.) *supra.*)

The cases we have examined involve persons of all ages, occupations and earning capacities, but taken as a whole and after an examination of each in conjunction with *Chesapeake & O. Ry. Co. v. Arrington, supra,* we conclude that $35,000 is excessive. (*Maloney v. Winston Bros. Co.,* 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634; *Walsh v. Winston Bros. Co.,* 18 Ida. 768, 111 Pac. 1090; *Neil v. Idaho & Washington N. R. R.,* 22 Ida. 74, 125 Pac. 331; *Keim v. Gilmore & Pittsburg R. R. Co.,* 23 Ida. 511, 131 Pac. 656; *Denbeigh v. Oregon-Washington etc. Co.,* 23 Ida. 663, 132 Pac. 112; *Kinzell v. Chicago etc. Ry. Co.,* 33 Ida. 1, 190 Pac. 255.)

In view of the above authorities considering amounts in connection with accidents similar to that involved herein, the verdict and judgment should be reduced to $20,000, and as such affirmed on condition that respondent file within thirty days after the going down of the *remittitur* a waiver of the excess of $15,000, and an acceptance of the judgment as thus modified. On failure to do so, the judgment will

be reversed *in toto* and a new trial granted. Modified and affirmed accordingly with costs in favor of respondent.

Budge, C. J., and Wernette, J., concur.

Morgan and Holden, JJ., dissent.

ON REHEARING.

(March 28, 1935.)

AILSHIE, J.—A rehearing was granted in this case upon petitions by both appellant and respondent. On rehearing it is contended by the respondent that under the Federal Employers' Liability Act this court is without authority or jurisdiction to interfere in the matter of damages or to reduce the same as excessive. This contention seems to be predicated upon a comparison between the jurisdiction and power of the Supreme Court of the United States and this court, and that since the Supreme Court of the United States will not consider the alleged excessive character of a verdict, therefore this court should not do so in dealing with a case arising under the federal act.

It is true that a state court hearing a case under the Federal Employers' Liability Act is bound by the terms of that act, as construed by the Supreme Court of the United States, in so far as it relates to the substantive law. On the other hand the Supreme Court has uniformly held that in matters of practice and procedure the state courts may proceed in accordance with the local rules and practice of the state.

In *Minneapolis & St. L. R. Co. v. Bombolis*, 241 U. S. 211, 36 Sup. Ct. 595, 60 L. ed. 961, Ann. Cas. 1916E, 505, L. R. A. 1917A, 86, Chief Justice White, in holding that the Seventh Amendment to the Federal Constitution has no application to a state court in a case arising under the Federal Employers' Liability Act, said:

"And it was, of course, presumably an appreciation of the principles so thoroughly settled which caused Congress, in

the enactment of the Employers' Liability Act, to clearly contemplate the existence of a concurrent power and duty of both Federal and state courts to administer the rights conferred by the statute in *accordance with the modes of procedure prevailing in such courts.* Indeed, it may not be doubted that it must have been the same point of view which has caused it to come to pass that during the number of years which have elapsed since the enactment of the Employers' Liability Act and the Safety Appliance Act, and in the large number of cases which have been tried in state courts, growing out of the rights conferred by those acts, the judgments in many of such cases having been here reviewed, it never entered the mind of anyone to suggest the new and strange view concerning the significance and operation of the Seventh Amendment which was urged in this case and the cases which were argued with it.'' (Italics ours.)

It has been held by both federal and state courts that an appellate state court in a case arising under this act may grant a partial new trial in accordance with the practice of the court, or may direct a new trial as to the amount of damages only and affirm on the issue of negligence. (*Norfolk So. R. Co. v. Ferebee,* 238 U. S. 269, 35 Sup. Ct. 781, 59 L. ed. 1303; *Kennon v. Gilmer,* 131 U. S. 22, 9 Sup. Ct. 696, 33 L. ed. 110.) It has likewise been held that state courts having jurisdiction of such cases may proceed under a state statute permitting three-fourths or more of the jurors to return a verdict. (*Louisville & N. R. Co. v. Holloway's Admr.,* 168 Ky. 262, 181 S. W. 1126; affirmed in *Louisville & N. R. Co. v. Holloway,* 246 U. S. 525, 38 Sup. Ct. 379, 62 L. ed. 867.)

In *St. Louis, I. M. & S. Ry. Co. v. Craft,* 115 Ark. 483, 171 S. W. 1185, L. R. A. 1916C, 817, a verdict was returned for $11,000 for pain and suffering; defendant appealed to the Supreme Court of the state where the judgment was reduced to $5,000 and *as so reduced was affirmed.* The case arose under the Federal Employers' Liability Act, and was

taken to the Supreme Court of the United States on writ of error (237 U. S. 648, 35 Sup. Ct. 704, 59 L. ed. 1160, 1165).

In passing upon the alleged excessive character of the verdict and judgment, the United States Supreme Court said:

"Finally, it is said that the award of $5,000 as damages for pain and suffering, even though extreme, for so short a period as approximately thirty minutes, is excessive. The award does seem large, but the power, and with it the duty and responsibility, of dealing with this matter, *rested upon the courts below.* It involves only a question of fact, and is not open to consideration here." (Italics ours.) ·

To the same effect see *Arizona ex rel. Gaines v. Copper Queen C. M. Co.,* 233 U. S. 87, 34 Sup. Ct. 546, 58 L. ed. 863; *St. Louis-San Francisco Ry. Co. v. Bridges,* 159 Miss. 268, 131 So. 99; *Yazoo & Miss. Valley Ry. Co. v. Scott,* · 108 Miss. 871, 67 So. 491, Ann. Cas. 1917E, 880, L. R. A. 1915E, 239; *Dimick v. Schiedt,* 293 U. S. 474, 55 Sup. Ct. 296, 79 L. ed. 603, 95 A. L. R. 1150. See, also, *Grand Trunk Western Ry. Co. v. Heatlie,* 48 Fed. (2d) 759, and cases cited; *Basher v. International Ry. Co.,* 15 Fed. (2d) 388; 2 Roberts' Federal Liability of Carriers, 2d ed., sec. 1031 et seq.

A further examination and consideration of this question satisfies us that the Federal Employers' Liability Act in no way modifies or impairs the right of this court which it has long exercised to modify a judgment by reducing the amount of damages allowed, conditionally upon the plaintiff accepting the modified judgment or otherwise having a new trial. This court has never assumed to unconditionally pass upon the facts and usurp the authority of the jury to unqualifiedly fix the amount of damages to be allowed. On the contrary, when we have held a verdict excessive, we have uniformly given the plaintiff his option, to accept the reduction, or have a new trial on the facts.

It is not easy to determine just what amount in a lump sum will remunerate one for the financial loss he sustains by reason of an accident of this kind. Many things enter into the determination of the amount that should be awarded

in a personal injury or death case. Courts must after all face and solve these problems in a practical way. In doing so they should keep in mind the fact that sympathy for the injured and his family and, sometimes, a not uncommon prejudice against employers and especially corporations, influences jurors in making up the amounts they will award. It is also proper to consider the general consensus of opinion of jurors and courts in fixing or deducing damages in similar cases in the various jurisdictions throughout the country; this on the theory that the prevailing opinion of reasonable practical men will be the nearest approach obtainable to what is a fair and just compensation in similar cases. The fact that the amount of a verdict is out of harmony and incompatible with the evidence bearing on the nature and extent of the injuries for which it is intended to compensate, affords, in many cases, ample reasons for holding it excessive, and this is especially true where the verdict is large and appears to be excessive by a large percentage of the whole.

Maloney v. Winston Bros. Co., 18 Ida. 740, 111 Pac. 1080, 47 L. R. A., N. S., 634, stated the rule in this state for computing damages for injury to a servant for the negligence of the master as follows:

"Where an injury has been received by the servant on account of the negligence of the master, damages should be computed and ascertained and awarded on the basis, as nearly as possible, of compensating the servant for the pain, suffering and loss he has sustained and will sustain in the future on account of the injury; and he should be placed, as nearly as it is possible to estimate, in as good a position as he was (in) before the injury was inflicted."

The foregoing rule was embodied in an instruction given by the court in case of Ramon v. Interstate Utilities Co., 31 Ida. 117, 170 Pac. 88, and on appeal was approved by this court. (See, also, Chesapeake & O. R. Co. v. Kelly, 241 U. S. 485, 36 Sup. Ct. 630, 60 L. ed. 1117, L. R. A. 1917F, 367.)

In the Maloney case the court held that the verdict rendered by the jury was "excessive and disproportionate

to the injury received," and affirmed the judgment conditionally on plaintiff filing a waiver of the amount held to be excessive. This court has uniformly adhered to the rule and practice adopted in the Maloney case down to the present time. Verdicts and judgments have been reduced by this court as excessive in the following cases: *Walsh v. Winston Bros. Co.,* 18 Ida. 768, 111 Pac. 1090; *Keim v. Gilmore & P. R. R. Co.,* 23 Ida. 511, 131 Pac. 656; *Denbeigh v. Oregon-Washington R. & N. Co.,* 23 Ida. 663, 132 Pac. 112; *Barter v. Stewart Min. Co.,* 24 Ida. 540, 135 Pac. 68; *McAlinden v. St. Maries Hosp. Assn.,* 28 Ida. 657, 156 Pac. 115, Ann. Cas. 1918A, 380; *Kinzell v. Chicago, M. & St. P. Ry. Co.,* 33 Ida. 1, 190 Pac. 255.

Counsel for respondent rely chiefly on the case of *Reinhold v. Spencer,* 53 Ida. 688, 700, 26 Pac. (2d) 796, in support of their contention that this court has no power to reduce the judgment, on the ground of the verdict being excessive. In that case this court said:

"Coming to the question of damages, which appellant urges are excessive, we know of no rule that will enable us to reduce the damages .... it is solely for the jury to estimate them as best they can by reasonable probabilities, based upon their sound judgment as to what would be just and proper under all of the circumstances, which may not be disturbed in the absence of some showing that the jury were biased or prejudiced or arrived at the amount in some irregular manner."

As may be observed from an examination of the Reinhold case, it involved an unusual and peculiar state of facts, out of which a permanent injury arose, continuing in the element of pain and suffering. The statement above quoted was made with special reference to the facts and circumstances as disclosed in that particular case and was not intended in any way to overrule or modify the long established practice of this court in its exercise of the power to modify and reduce a judgment, because of the excessive amount allowed by the verdict of the jury. An examination of the cases cited in support of the above-quoted state-

ment will disclose that in all those cases this court held that the verdicts were not in fact excessive.

A further examination of this case has convinced us that the opinion of the court on the original hearing herein should be adhered to, except in so far as it reduced the judgment to $20,000.

The members of the court are not in accord on the question of the excessive character of the verdict and judgment. Chief Justice Givens still adheres to the conclusion reached by him upon the original hearing, that the judgment should be reduced to $20,000. Justice Budge favors a reversal of the judgment as to the amount of damages and the ordering of a new trial on that issue alone. Justice Morgan is of the opinion the judgment should be affirmed for the full amount of $35,000 in accordance with the verdict of the jury; while Justice Holden and the writer are of the opinion that the judgment should be reduced to $25,000 and conditionally affirmed in that sum.

It is the opinion of the Chief Justice, Justice Holden and the writer that, since one of the justices favors an affirmance of the judgment *in toto* and two favor affirming in the sum of $25,000; it necessarily follows as a matter of law that the judgment should be, and is, affirmed in the sum of $25,000. Judgment will be affirmed in the sum of $25,000 on condition that respondent file within thirty days after the going down of the *remittitur* a waiver of the excess of $10,000. Upon failure to do so, the judgment will be reversed and a new trial granted on the whole case.

Judgment modified and affirmed in accordance with the views above expressed. Costs awarded in favor of respondent.

Givens, .C. J., and Holden, J., concur.

BUDGE, J., Concurring in Part and Dissenting.—I concur in all of the opinion on rehearing excepting that portion with reference to the amount of damages to be awarded.

All members of the court are of the opinion that the presiding judge committed no reversible error during the course

of the trial and that appellant is liable. The question now troubling the court is, how much respondent is entitled to recover. One justice insists that the jury's verdict, namely $35,000, should not be disturbed,—two justices insist that the jury's verdict is excessive and should be reduced to $25,000,—one justice maintains that the verdict in either of the above amounts is excessive and should be reduced to $20,000.

In view of the above situation the writer is of the opinion that the judgment should be reversed and the cause remanded with instructions to the trial court to impanel a qualified jury and limit the issue solely to the amount of damages to be awarded. (*Yazoo & Mississippi Valley R. Co. v. Scott*, 108 Miss. 871, 67 So. 491, Ann. Cas. 1917E, 880, L. R. A. 1915E, 239, and note to L. R. A.; *Norfolk Southern R. Co. v. Ferebee*, 238 U. S. 269, 35 Sup. Ct. 781, 59 L. ed. 1303.) In view of the provisions of article 5, section 6, of the Constitution of Idaho, I am by no means convinced that when only two members of the court agree upon a like and definite sum, another determines upon a smaller sum, another upon a larger sum, and still another for reversal and resubmission upon the question of damages, that the legal effect thereof is that the verdict shall be and is $25,000. No definite amount is fixed by three members of the court. It is not the judgment of the justice who insists the verdict should stand at $35,000, neither is it the justice's judgment who insists that the verdict and judgment should be reduced to $20,000, and it is quite apparent it is not the writer's conclusion that the judgment should be reduced in any amount by the Supreme Court. The Constitution, article 5, section 6, provides:

"The Supreme Court shall consist of five justices, a majority of whom shall be necessary to make a quorum or pronounce a decision . . . . "

I cannot bring myself to believe that either the spirit or letter of the Constitution is being observed. In my opinion, in view of all the facts and circumstances surrounding and connected with the case, it is a proper case for a jury to

fix the amount of damages and not the court. In none of the cases cited will it be found that a majority of the court disagreed as to the amount ·to which the verdict should be reduced.

MORGAN, J., Dissenting.—In addition to the loss of his arm respondent sustained, as a result of the accident, an injury to his head the severity and permanency of which are in dispute.

I dissented from the opinion originally filed in this case because the question of damages was submitted to a jury and it unanimously found $35,000 to be adequate and not excessive. Its members had an opportunity to, and were charged with the duty to observe the demeanor of the witnesses, including respondent, while testifying and were in better position than are the members of this court to determine as to their credibility and as to what the verdict should be. Furthermore, if it is the purpose of this court to attempt to discharge the duties of a jury and determine what the verdict is to be, it should govern itself by the rules of evidence, intended for the guidance of triers of facts, and not be actuated by the decisions of other courts in other cases. What other courts have done is not admissible in this case to fix the amount of recovery, nor to prove anything else. Since the evidence of what damages have been awarded other litigants for their injuries was not available to the jury the Supreme Court should not base its modification of the verdict thereon.

After rehearing I was and am still of the opinion the verdict should not be disturbed, and I voted, and am still trying to vote, to affirm the judgment.

I dissent from the opinion on rehearing on the ground that it pronounces a decision by a minority of the court in violation of Idaho Constitution, article 5, section 6, which provides:

"The Supreme Court shall consist of five justices, a majority of whom shall be necessary to make a quorum or pronounce a decision . . . . "

In this case the chief justice is in favor of reducing the judgment from $35,000 to $20,000 with the alternative that it be reversed unless the reduction be agreed to by respondent, and two of the justices are in favor of reducing it to $25,000 with like alternative. One of the justices is in favor of reversing the judgment and remanding the case for a new trial on the sole question of the amount of damages to be awarded, and I am in favor of affirming the judgment for respondent in the sum of $35,000.

The chief justice and the two justices who favor lopping $10,000 off the recovery are agreed that the judgment is reduced to that extent, although but two justices voted for it, and that an option is given respondent to accept it or suffer a reversal.

While it takes three members of this court to constitute a majority, required by the constitution to pronounce a decision, and but two are agreed that the judgment shall be $25,000, the reasoning of the opinion on rehearing, admirable for its ingenuity, has brought about the remarkable result of $1+1=3$. In order to produce this mathematical monstrosity my vote to affirm the judgment for $35,000 has been so counted as to reduce it to $25,000, or to reverse it if that result proves to be less distasteful to respondent than the reduction.

All this is, no doubt, entirely clear to the three members of the court who have agreed that this is the result of our disagreement, but it leaves me scratching my bucolic head in uncertainty as to which shell conceals the elusive little ball of justice.