701 P.2d 210

**Pedro Del ROJAS, Sr., individually, and as Guardian ad litem for Pedro Rojas, Jr., a Minor, Plaintiff-Appellant,**

v.

**LINDSAY MANUFACTURING COMPANY, a foreign corporation, and John Does Nos. 1 through 10, Defendant-Respondent,**

and

**Kenneth Marshall, Defendant.**

No. 15244.

Supreme Court of Idaho.

April 30, 1985.

James Annest, Burley, for plaintiff-appellant.

Michael E. Ramsden, Boise, for defendant-respondent.

HUNTLEY, Justice.

Pedro Del Rojas, Sr., had brought an action for personal injuries against Lindsay alleging that the company was liable for injuries sustained by his son, Pedro Rojas, Jr., when the son became entangled in an unguarded drive-shaft of a Zimmatic Center Pivot Irrigation System (hereinafter

"the irrigation system") manufactured by Lindsay.

Rojas argues that the trial court erred in giving certain instructions, by improperly commenting on evidence, by permitting improper comment by Lindsay's counsel, and by failing to admit certain evidence. He also contends that the jury's verdict was not supported by the evidence.

On June 22, 1975, Pedro Rojas, Sr., his family and the families of other itinerant workers were employed by Kenneth Marshall to thin a beet crop in a field serviced by the Lindsay irrigation system. The system was not operating when the beet thinning commenced. As the workers drew near the system, it became necessary for them to either go around it, under it, or over it.

The pivot was not running as these workers were passing it. Marshall, in order to get the equipment out of the workers' way, activated the system. The workers were not informed that the system would be activated.

Pedro Rojas, Jr., was following his parents in the field. He leaned against the pipe with his sleeves and arms hanging down over the drive-shaft. When the machine was activated, his sleeves were caught in the drive-shaft and he sustained injuries.

The drive-shafts of the system lacked shields or guarding. The system had been sold to Marshall without guards. However, guards which had been designed by Lindsay to cover the drive-shaft cover assembly were available for distribution to purchasers of the equipment as early as 1973. The cover assembly was designed to prevent crops from wrapping around the drive-shaft and doing structural damage to the equipment. The accident could not have happened if the drive-shafts had been guarded with the cover assembly.

Rojas brought action against Marshall, the farmer/owner of the irrigation system, upon the theory of negligence. He also brought action against Lindsay Manufacturing Company, the designer, manufacturer and distributor of the system, upon the alternative theories of strict liability and negligence. At the opening of the second day of trial, Marshall and Rojas entered into a settlement agreement and the case proceeded against Lindsay. The case was submitted to the jury upon special verdict. The jury found in favor of Lindsay and against Rojas, fixing the negligence of Rojas, Sr., at 20%, the boy at 0%, Lindsay at 0% and Marshall at 80%.

■ We first address Rojas' contention that the trial court erred in giving both Instruction 19 and Instruction 21.

Instruction 19 provided:

A product is in a defective condition when the product does not meet the reasonable expectation of the ordinary user as to its safety. A product is unreasonably dangerous if it is dangerous to an extent beyond that which would be contemplated by the ordinary user who purchases it with the ordinary knowledge common to the community as to its characteristics. *For purposes of this case, you are instructed that the ordinary user is defined to be a farmer or qualified maintenance person.* (Emphasis added).

Instruction 21 provided:

A product is in a defective condition unreasonably dangerous to person or property if it is more dangerous than would be expected by an ordinary person who may reasonably be expected to use it. The law does not say what would be expected by an ordinary person or who may reasonably be expected to use the product. Both of these issues are for you to decide.

■ Rojas submits that by giving both of the above instructions, the trial court improperly limited the classes of persons who might maintain an action for defective design or manufacture by limiting the class to a farmer or qualified service person. He urges this Court to accept the proposition that Instruction 19 limits the right to recovery to a farmer or qualified maintenance person. We do not agree. The instruction

states the law as to the perspective from which it is to be determined that a product is "unreasonably dangerous". *See* Restatement (Second) of Torts, § 402A (1965), Comments (i) and (*l* ). The proper perspective is that of the ordinary user or consumer for whose use the product is intended, i.e., for whose use it must be safely designed. Hence, we find no error in the challenged instructions.

We next consider whether Rojas was denied a fair trial because Lindsay's counsel, in closing argument, alluded to the settlement between Marshall and Rojas. Following jury selection and opening statement by Rojas, the trial court stated:

> ... As you probably have noticed, ladies and gentlemen, Mr. Marshall is no longer at the counsel table. And I can advise you that Mr. Marshall and Mr. Rojas have compromised their difficulties and have settled their portion of this case. Therefore, Mr. Marshall is no longer a party defendant.

During final argument, Lindsay's counsel stated:

> Now, you will be asked on the verdict form whether Mr. Marshall was negligent; and I submit to you that he was negligent. And I submit to you that his, his action was what caused this accident. Otherwise why would he have settled? I can tell you—and I don't feel real good right now; but it is not very much fun trying lawsuits. It is hard work. And if you can settle, it is a lot easier. But if you think you are right, you have a right to defend yourself.

He also argued: ˙

> Anything can hurt you if used improperly. And we submit that the cause of the accident was the improper use of the machine by Kenneth Marshall; and Kenneth Marshall recognized the use of the machine when he injured Pedro Rojas because he settled this case. He got out.

Rojas contends that counsel's comment was inappropriate and prejudicially influenced the jury. He maintains that offers of settlement or compromise are inadmissible and privileged. Lindsay claims that

counsel's remarks regarding a pre-trial consummated settlement between the plaintiff and another defendant were proper under the circumstances.

The rule is well established that an offer made in an effort to compromise a cause of action cannot be legally admitted in evidence over the objection of the opposing party. *Kroetch v. Empire Mill Co.*, 9 Idaho 277, 74 P. 868 (1903). Likewise, all statements made in the course of settlement negotiations are inadmissible. *Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 606 P.2d 944 (1980). These rules are grounded upon two theories: (1) that the offer is of dubious relevance on the issue of liability since it may merely imply a desire for peace and not a concession of wrong-doing and (2) the policy of promoting settling of disputes would be discouraged if offers of compromise were admitted in evidence. McCormick on Evidence, § 274, Third Ed. (1984) and 4 Wigmore, Evidence § 1061(c) Chadbourn rev. (1972). However, assuming, without deciding, that Lindsay's counsel improperly drew the inference that Marshall admitted guilt by settling with Rojas, since Rojas' counsel failed to object, move for a mistrial, or seek a cautionary instruction, the issue has not been preserved for appeal. *Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975); *Johnson v. Emerson*, 103 Idaho 350, 647 P.2d 806 (Ct.App.1982).

Rojas insists that the verdict was not supported by the evidence. We disagree. Conflicting evidence was presented as to whether the drive-shaft on the irrigation system was guarded by location and as to whether the product was unreasonably dangerous; however, there was substantial evidence to support the jury's verdict. A jury verdict will not be overturned where there is substantial although conflicting evidence to support it.

As to the other issues raised on appeal, we have considered them and find them to be without merit.

Judgment affirmed.

Costs to respondent. No attorney's fees.

DONALDSON, C.J., and SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

What the majority opinion fails to disclose is that the improper closing remarks of counsel for Lindsay Manufacturing Co. were intentionally made. This was not a case of mere inadvertence on the part of inexperienced counsel, but a deliberate improper thrust aimed at winning a lawsuit by whatever means necessary. Worse yet, alternatively, had counsel representing the minor plaintiff interposed an objection—there was only one remedy which the trial court could have realistically applied. That would have been a declaration of a mistrial. The remarks made were so palpably gross and unfair that it is inconceivable that even the most elaborate cautionary instruction imaginable would have wiped from those jurors' twelve minds the statement of defense counsel—an officer of the court—that defendant Marshall's settlement was made because "his action was what caused this accident." In no way can the bell which was rung by that statement be unrung.

While a mistrial would have, at best, amounted to an inconvenience to Lindsay Manufacturing Co., and an expense to its insurance carrier if one is involved, it could have proven an insurmountable obstacle of expense to the minor plaintiff. This was a long and expensive trial.[1] It appears to have been a trial well tried by both sides, and a trial which would have ended in a fair and untainted verdict—other than that defense counsel succumbed to the opportunity of cashing in on improvident remarks of the trial judge as to the Marshall compromise—which in the minds of the jurors would have been absolutely innocuous until seized upon by defense counsel for a wholly improper purpose.

It is true that counsel for the minor plaintiff made no objection. The failure to object, so says the majority, was a grievous fault. If that be true, then grievously does the minor plaintiff answer for it. As for me, however, I am not in the least persuaded to this strange tunnel-visioned view. By far and large the better experienced trial lawyers whom I have known would have chosen the course here followed by defense counsel. There is always the possibility that a jury may not succumb to such wiles, in which event the party who has been so unfairly treated may nevertheless prevail. If he does not, then either the trial court or an appellate court may nevertheless award a new trial in the interests of fundamental fairness and the preservation of the integrity of the trial courts. This is *not* a situation where counsel sat back to see if some improper evidence might be turned to his client's advantage. This was a situation where only the minor plaintiff suffered from the conduct in question, and he would suffer a mistrial if he did object, and if he did not object would suffer having the jury deliberate while misguided by defense counsel. There may be an experienced trial attorney who under these circumstances would have vehemently objected without asking for a new trial, but I do not know him. But, says the majority, the law requires that you *must* object, or you cannot later complain, and we are cited to *Annau v. Schutte*, 96 Idaho 704, 535 P.2d 1095 (1975), as the latest word from this Court, by use of which the majority disposes of the most significant issue on this appeal in 23 words.

In *Annau*, Justice McFadden wrote for himself and Justices McQuade, Donaldson and Shepard. The basic principle has been succinctly summarized:

"Ordinarily improper and prejudicial comments of counsel during the trial must be objected to at the time the remarks are made or no assignment of error can be made on that point on appeal." Bakes, "Appellate Procedure" 10 Idaho L.R. 117, 131 (1974).

1. Lindsay Manufacturing Co. was awarded over $3,000 for costs incurred in defending the suit.

*Annau, supra,* at 709, 535 P.2d at 1100.

Modesty at being so quoted may have precluded Justice Bakes from joining Justice McFadden's opinion. Because there is often much merit in that which Justice Bakes writes, prime examples of which are his recent dissent in *State v. Currington,* 108 Idaho 539, 700 P.2d 942 (Sup.Ct.1985) and *State v. Creech,* Part II, I.C.R. (Oct. 20, 1977) [2]—in both of which cases he aptly pointed out the failure of the majority opinions to understand that the word "procedural" means the procedure by which the Idaho courts conduct their business, not the substantive law which governs the case, it was only logical to turn to the Law Review article. Justice Bakes wrote:

> (d) **Comments of counsel at trial.** Ordinarily improper and prejudicial comments of counsel during the trial must be objected to at the time the remarks are made or no assignment of error can be made on that point on appeal. In *Hayward v. Yost* [72 Idaho 415], the court stated at page 424 [242 P.2d 971]:
>
>> The objection to the remarks by counsel, to be made available on appeal, should have been made at the time the remarks were made. ... This means that ordinarily an objection comes to late for the purpose of review on appeal, if made for the first time after the jury has retired or the cause has been submitted to them, or after the close of the arguments, or on motion for new trial or otherwise, after the verdict has been rendered.
>
> However, the court also intimated, on at least one occasion, that although counsel made no request of the court to rule on the remarks by opposing counsel, if the admonition or instruction by the court would not have cured the error, it possibly could be raised on appeal.
>
> Bakes, "Appellate Procedure," *supra,* at 131–32.

What Justice Bakes has written is what most able trial practitioners have always known—although *ordinarily* an objection must be made, and will be made, there are nonetheless some circumstances where an admonition or instruction by the court will not cure what counsel has said.[3] Agreeing with Justice Bakes' view of the ordinary or general rule, this case does not fall into that category—as I shall demonstrate. Moreover, the manner in which defense counsel made his attack was so adroitly done that it can be further seen that counsel for the minor plaintiff is sincere and correct in his assertion that he was both caught short and taken by surprise.

At oral argument, counsel for Lindsay, in defending his conduct, launched into a discourse which seemingly was aimed at the trial judge who, after all, so goes the intimation, was guilty of opening up the matter of the compromise which plaintiff made with defendant Marshall. The trial judge's remarks so advising the jury are set out in the majority opinion. Lindsay's counsel, in arguing to this Court, first made the point that plaintiff's counsel made no objection to what the judge had told the jury, and then advanced the thought that he was justified in reading to the jury a transcript of the judge's remarks—which he referred to as an *instruction,* because "my comment on the court's instruction in closing argument ... did not depart from what the court had said.[4] The discussion was of a *settlement.*

---

**2.** Following a grant of rehearing in *Creech* and a companion case, *State v. Lindquist,* 99 Idaho 766, 589 P.2d 101 (1979), the views of Justice Bakes expressed in his 1977 *Creech* dissent became the majority view in his 1979 *Lindquist* opinion.

**3.** Justice Bakes in his article inadvertently used the word "possibly." The issue *was* raised on appeal, and it was passed upon by the Court.

*Roy v. Oregon Short Line R.R. Co.,* 55 Idaho 404, 412, 42 P.2d 476, 479 (1935).

**4.** The trial judge, however, did not excite the attention of the jury by adding that Marshall's "action was what caused this accident." Nor did the trial judge add "otherwise why would he have settled?. I can tell you...." And "tell you" counsel did. Not once, not all at once, but like a boxer, with three separate jabs, as hereinafter related.

No mention was made of an amount, the payment of money, or anything, merely the fact that a *settlement* had taken place." At this point a comment on use of the word "instruction" from the Bench produced the following colloquy:

MR. RAMSDEN: Well, that, Your Honor, is the only instruction that exists concerning this settlement. There is no formal written instruction that the jury took into the jury room with them.

JUSTICE BISTLINE: Well, I would think not. But this is what you're talking about when you use the word "instruction"?

MR. RAMSDEN: Yes, Your Honor, there is no formal written instruction.

JUSTICE BISTLINE: Advisement would be a better word perhaps.

MR. RAMSDEN: Very well, anyway that information was imparted to the jury by the court.

JUSTICE BISTLINE: Now, during the selection of the jury had Mr. Marshall been sitting there?

MR. RAMSDEN: Yes, along with his counsel, Mr. Doer.

JUSTICE BISTLINE: And so, somewhere along in the selection process, they struck an agreement. He got off.

MR. RAMSDEN: As I recall the record, Your Honor, and my recollection of the trial, the jury was selected and the jury selection concluded at about 6:30 on Monday evening. On Tuesday morning I was advised by Mr. Doer, who represented Mr. Marshall, that a settlement had been reached. The court stood in recess while the settlement documents were executed, and the minor's compromise was approved. Pardon me, the minor's compromise was approved at a later recess, I believe it's in the record. In any even, Mr. Doer and Mr. Marshall then left the courtroom to come back another day to execute the documents and then the court gave that information to the jury.

JUSTICE BISTLINE: Now, on page 8, do you see anything wrong with what the trial court said in explaining to the jury why there were two empty chairs?

Do you see anything wrong with that? The language that he used here?

MR. RAMSDEN: Well, in—I have been involved in cases where this has taken place. Often the court will instruct saying, Ladies and Gentlemen, Mr. Marshall is no longer a party to the case. Your are not to consider this one way or the other. And no further mention is made or anything. However, the court did use the word settlement and compromise of differences.

JUSTICE BISTLINE: Well, compromise, yes. But do you see anything wrong with the court doing that? If the shoe were on the other foot, would you think there was anything wrong with this?

MR. RAMSDEN: If the shoe were on the other foot, I would request a cautionary instruction that the jury was not to consider that for any purpose. But, no cautionary instruction was requested by the opposing side.

JUSTICE BISTLINE: Of course that would tend to emphasize it if one were requested and if one were given. Now, my next question is, because the court did this and thought it was proper to do it, do you see any justification for your further comments then in final summation?

MR. RAMSDEN: Well, I believe, Your Honor, that I am justified in the zealous representation of my client to make any comment—

JUSTICE BISTLINE: I understand that, but do you see any justification for your remarks amplifying and going beyond what the court said?

MR. RAMSDEN: The same justification, Your Honor, that I would find in remarking upon the statements of Professor Crawford relative to the unreasonable danger of the product or the statements of Mr. Aridondo saying that he felt Mr. Marshall had driven the machine right over Pedro.

JUSTICE BISTLINE: These were witnesses?

MR. RAMSDEN: Yes.

JUSTICE BISTLINE: You were not a witness?

MR. RAMSDEN: No, Your Honor, I was counsel.

JUSTICE BISTLINE: I see. Go ahead.

Where counsel was commendably candid in suggesting that the trial court may have stated more than was necessary in advising the jury that Mr. Marshall was no longer a party, the decision of plaintiff's counsel to not emphasize the court's statements by objecting thereto cannot possibly serve as an excuse for counsel's improper and expanded use of the court's statement in final summation. Even less acceptable is the contention that such improper summation was justified by responses which had been given by witnesses. Witnesses are sworn to tell the truth, but they are not sworn to refrain from stating or alluding to any matter without a reasonable basis for believing that it is reasonable to the case or is supported by admissible evidence. Attorneys, however, are so sworn.

The majority, while its opinion does present the statements of counsel for Lindsay, does not seem to fully comprehend the manner in which the same were unfolded in the court room. It was not one continuous statement. After he was fairly well along in his argument, in a discussion of causation, he told the jury that "Ken Marshall ran this machine, literally ran this machine over Pedro Rojas, Jr.; and that's what caused this accident." There followed a few minutes of summation which explained the use of Lindsay's machines—"not used as mechanisms for kids to play on ... no relationship to people hoeing beets ... not used for people to work on"—and then the *non sequitur* interjection reminding the jury that it had been informed by the judge that "Ken Marshall has settled his differences with the plaintiff," which new theme was *immediately* pursued by counsel's adding: "Because if Ken Marshall had not started the machine up on that day without watching what he was doing, without making sure that the kids were not in danger, this accident would not have happened."

Plaintiff's counsel could not reasonably have anticipated that defense counsel would unexpectedly go so far out of the bounds of propriety as to remind the jury that Ken Marshall had "settled." Defense counsel had no right to make that statement. But the statement *was* made and it would be a very alert attorney who could have moved swiftly enough to interject an objection before defense counsel had moved on. Moreover, the statement did not vary much from what the trial judge had said. I cannot conceive of an able trial counsel highlighting the statement by objecting to it. It would have been absurd to register any objection without moving for a mistrial. If a mistrial would not be granted, even the slightest objection would have been a tactical trial error. Moreover, I fail to see that the trial court would have done any more than to overrule the objection.[5]

5. Plaintiff's motion for a new trial in Part C was based upon defense counsel's improper argument. The trial court's disposition of this extremely crucial issue was only this, and nothing more:

Parts C and D are not supported by the detailed affidavit required by 59(2)(7).

... The alternative motion for a new trial is denied.

The entire text of the order denying plaintiff's post-judgment motions makes it clear that the trial court was referring to I.R.C.P. 59(a). Rule 59(a)(2) governs misconduct of the jurors—which was Part D of plaintiff's motion. Rule 59(a)(7) governs error in law occurring at the trial. Deviant summation by counsel would fall into this subdivision.

Rule 59(a) does *not* require detailed affidavits in motions based upon subdivision 7. It does provide only that a motion based upon subdivision 7 "must set forth the factual grounds therefore with particularity." Plaintiff's motion complied with the rule. Whether the trial judge was confused or indifferent, he should have realized that Part C of the motion was based on trial proceedings, of which his and the reporter's notes are far better detail than any affidavit, and are *the* record of the trial concerning which error in law is charged.

The trial court's denial of Part C of the plaintiff's motion, without even considering the same, was clearly error. And, the notice of appeal which I read in the record clearly advises us that the appeal is not only from the final judgment, but from the order denying the plaintiff's motion for a new trial.

In other days this Court, differently constituted one may be certain, would not rule on plain-

Many are the trial judges whom I have known who would have on their own volition cautioned counsel against such remarks. Here, the trial judge said nothing, notwithstanding that it was his own remarks which were being improperly used. And, as the Court of Appeals said in *Johnson v. Emerson*, 103 Idaho 350, 354–55, 647 P.2d 806, 810–11 (Ct.App.1982), relied upon in the majority opinion:

> We agree with the rule expressed in *Annau.* However, we do not interpret it to require counsel to raise all objections instantly, during closing argument itself. Frequent objections during argument, even if proper, risk alienating the court and may serve only to emphasize objectionable comments for the jury. *See* Annot., 63 A.L.R.3d 311 (1975).

Following this first excursion into improper summation, defense counsel went into a discussion of OSHA regulations, and other topics. Eventually, however, and apparently pleased at having encountered no rebuff on his first foray, he abandoned a discourse which compared following cookbooks with OSHA standards and certain testimony from witnesses, and suddenly diverted to Mr. Marshall's negligence. At this point all stops were pulled in explaining to the jury that defense counsel was satisfied as to Marshall's negligence, because—"Otherwise why would he have settled?"

Having said that, he quickly jumped away to a discussion of automobiles in general, the dangerous propensities of their moving parts and then specifically to his own first tuneup on a car engine replete with points and plugs, all in close proximity to fan blades. Much, much later in the argument, and just seconds before concluding, for a third time, he alluded to the settlement with Marshall as evidencing that Marshall's improper use of the machine was the cause of the accident, in recognition of which Marshall "settled *this* case. He got out."

In that manner was the minor plaintiff, Pedro Rojas, deprived of a fair trial. I would reverse and remand for a new trial and award the minor plaintiff all of his costs on appeal and all of his costs incurred in the first trial, including attorney's fees at both levels. For certain I would not endorse the improprieties here engaged in. The Court this day sends out a strange message. For certain it is not the same message which the Chief Justice semi-annually delivers to the Idaho Bar admittees.

tiff's right to a new trial without the trial court having first done so. It is axiomatic that the trial judge who has presided over the trial is ordinarily best suited to gauge the impact of improper argument on the jury—a jury with which the court has had many days of contact.