715 P.2d 917

**EQUAL WATER RIGHTS ASSOCIATION, Robert Haakenson, Barbara Dennis, Joyce Liechti, each individually and on behalf of those similarly situated, Plaintiffs-Appellants, Cross-Respondents,**

v.

**CITY OF COEUR D'ALENE, Defendant-Respondent, Cross-Appellant,**

and

**Don Johnston, Loren R. Edinger, Lois Land Albrecht, Ed Jones, James Fromm and Ford Dunton, each individually and in their official capacity, Defendants.**

No. 14920.

Supreme Court of Idaho.

July 11, 1985.

On Rehearing March 6, 1986.

Raymond C. Givens, Coeur d'Alene, for plaintiffs-appellants, cross-respondents.

William D. McFarland, and Dana L. Rayborn Wetzel, Coeur d'Alene, for defendant-respondent, cross-appellant.

DONALDSON, Chief Justice.

After purchasing the Idaho Water Company system, the City of Coeur d'Alene (City) commenced operation of the water system on January 1, 1975. At that time, the water rates for all users were the same whether the user resided inside or outside the city limits. Subsequently, the City passed various resolutions which increased the rates charged to outside users. The outside city water users then organized the Equal Water Rights Association (EWRA). After attempts to get the City to equalize the water rates for inside and outside city users failed, EWRA filed an eight-count complaint on December 18, 1979. On October 10, 1980, the district court denied a partial summary judgment motion filed by EWRA and at the same time dismissed EWRA's Counts V & VI. The district court then referred the rest of the case to a special master. After a five-day trial, the special master issued a lengthy decision on February 5, 1982 holding that the water rates charged by the City were unreasonable. The district judge reviewed various objections to the master's report and permanently enjoined the City from charging inside and outside city users different rates. The district court's "Judgment and Order" was filed on June 17, 1982 and contained the following final paragraph:

"The master's report herein is hereby adopted in full other than as expressly stated otherwise in this order. The Court concludes thereon that the defendants should be enjoined from and after the first day of July, 1982, charging, assessing or collecting from water users whose place of use is outside of the Coeur d'Alene City Limits any higher or different rate for the water used than said defendant collects from water users whose place of use is located within the Coeur d'Alene City Limits. Plaintiffs' request for money damages or reimbursement for any overcharge that may have heretofore been made is denied. Plaintiffs' request for attorney fees is denied but plaintiffs shall be awarded their costs of Court. This order, together with the Court's order of October 14, 1980, and the master's report, shall constitute the Court's Findings of Fact, Conclusions of Law and final Judgment in all respects except as to an injunction order and taxing of costs. Plaintiffs' counsel is instructed to prepare and submit a proposed injunction order together with a judgment for their costs supported by affidavit or other statement as required by I.R.C.P. 54. IT IS SO ORDERED."

On June 23, 1982, pursuant to I.R.C.P. 59(e), EWRA filed a motion to amend the judgment. That motion was denied by the trial court in an order dated November 3, 1982. Approximately one month later, EWRA submitted a "Final Judgment" ex parte to the district court which was issued by the district court on December 7, 1982. That judgment was a little over one page long and contained the following:

"IT IS HEREBY THE JUDGMENT OF THIS COURT that:

"1. Plaintiffs are the prevailing party, having prevailed on Count 3.

"2. The Permanent Injunction previously issued on June 21, 1982 shall continue in effect.

"3. Relief requested under Counts 1, 2, 4, 5, 6, 7, and 8 is denied.

"4. Plaintiffs' request for damages, restitution or recoupment of overpayment is denied.

"5. Defendants are liable to Plaintiffs for Plaintiffs' costs in the sum of $15,396.94.

"6. Plaintiffs' request for an award of attorney fees is denied."

On January 17, 1983, EWRA filed a Notice of Appeal from the "Final Judgment" dated December 7, 1982. On February 9, 1983, the City filed their Notice of Cross-Appeal. On June 6, 1983, the City also filed a motion to dismiss EWRA's appeal.

We reserved ruling on the City's motion to dismiss until final oral argument during which each side presented argument on the motion as well as the substantive aspects of the case. We now grant the City's Motion to Dismiss this appeal and therefore do not reach the substantive merits of the case.

The City contends that the June 17, 1982 Judgment and Order was the final judgment in the case. The City urges that under I.A.R. 14(a), that judgment started a 42-day statute of limitations within which EWRA had to file a Notice of Appeal. The City concedes that the limitation period was then tolled by EWRA's motion to amend the judgment, but argues that it began running again on November 3, 1982, when that motion was denied. The City concludes its argument by pointing out that EWRA's Notice of Appeal was not filed until January 17, 1983, more than 42 days later and thus was untimely.

On the other hand, EWRA urges that the December 7 judgment was the final judgment in the case. Since EWRA's appeal was filed within 42 days of December 7, EWRA insists that the appeal was timely.

█ Since an appeal may only be taken from a final judgment, I.A.R. 14(a), we must begin our analysis with a determination of which order was the final judgment, the June 17, 1982 order or the December 7, 1982 order.

"Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title.... Thus if the instrument 'ends the suit,' 'adjudicates the subject matter of the controversy,' and represents a 'final determination of the rights of the parties,' the instrument constitutes a final judgment regardless of its title." *Idah-Best, Inc. v. First Sec. Bank, Etc.,* 99 Idaho 517, 519, 584 P.2d 1242, 1244 (1978) (citations omitted).

In the instant case, we perceive that the judgment and order signed by the district court on June 17, 1982 was intended to be the final judgment and order in the case. That order included a comprehensive adjudication of the subject matter in controversy and represented a final determination of the rights of the parties. It ended the suit. The December 7, "Final Judgment" was nothing more than a two-page summary of all orders, findings of fact and conclusions of law previously entered on the record in the case. It did not adjudicate any subject matter of the controversy, nor did it represent the final determination of the rights of the parties. Thus, the December 7 order was not a final judgment.

█ Having determined that the June 17, 1982, judgment and order was the final judgment, we must now determine whether EWRA's appeal was timely. I.A.R. 14(a) requires the filing of the Notice of Appeal within 42 days from the date of final judgment. However,

"The time for an appeal from such judgment, order or decree is terminated by the filing of a timely motion which, if granted, could affect the findings of fact, conclusions of law or judgment ... in which case the appeal period commences to run upon the date of the filing stamp on the order deciding such motion." I.A.R. 14(a).

Subsequent to the June 17 judgment, EWRA timely filed a motion pursuant to I.R.C.P. 59(e) to amend or alter the judgment. If granted, that would have affected the findings of fact, conclusions of law or judgment previously entered. The district court denied the motion in its order dated November 3, 1982. Thus, under I.A.R. 14(a), the appeal period commenced to run on November 3, 1982. EWRA filed its Notice of Appeal on January 17, 1983, 75 days later. Since, EWRA's notice was not timely filed, there can be no appeal from the judgment. Therefore, respondent's motion to dismiss this appeal is granted.

Costs to respondents.

No attorney fees on appeal.

SHEPARD, BAKES, BISTLINE and HUNTLEY, JJ., concur.

BISTLINE, Justice, specially concurring.

June 17, 1982. The district court signed a document entitled Judgment and Order. Therein was the declaration that it and preceding documents would constitute the *"final judgment"* other than for an injunctive order and a judgment for the costs.

While time for appeal was running, but had not expired, another document entitled "Final Judgment" was submitted to the trial court, apparently on the premise that it was believed that the final judgment of June 17 had failed to encompass some of the litigated issues. The trial court, wholly ex parte—meaning without any requirement of notice to the adverse party, signed this second Final Judgment. Nothing in the record explains why the trial court did so. Inferentially, that the trial court did do so must have caused counsel to believe that the trial court was of the view that this second Final Judgment was required to close the file. If that assumption was sound, then the Judgment of June 17 was not the final judgment in the case. Now, counsel learns, to his misfortune, that his reliance on what he thought to be the experienced trial court's view of the state of the matter was misplaced. Time to appeal from the June 17 Judgment ran out before an appeal was taken from the second Final Judgment.

It is a hard case, but I am compelled to vote with the majority. Similarly, just this very week, the Court, on a 4–1 vote, denied a Petition for Rehearing in *Rojas v. Lindsay Manufacturing Co.,* 108 Idaho 590, 701 P.2d 210 (1985), on the grounds that the petition did not timely reach the clerk's office because, although the street address for the Supreme Court (451 W. State Street) was correct, two numbers in the zip code were inadvertently transposed, and caused the fatal delay. A copy of the Petition for Rehearing, which was addressed correctly, reached opposing counsel in Boise prior to the deadline. Presumably, the Court, in sublime obeisance to its own rules, would have done the same had it been conclusively established that the notice of appeal, although correctly addressed, after reaching Boise was simply misplaced by the Postal Department while time ran out. Perhaps this Court could be urged to do as other courts have reasonably done—provide a rule which allows for relaxation of temporal rules on showing of good cause.

ON PETITION FOR REHEARING

DONALDSON, Chief Justice.

The petition for rehearing in the above-entitled action was granted and reargued. The Court has reviewed the record, considered the arguments presented by counsel, and we continue to adhere to the views expressed and the conclusion reached in our earlier opinion dated July 11, 1985.

SHEPARD and BAKES, JJ., concur.

BISTLINE, Justice, dissenting.

Times change, the Court membership changes, and the Court's opinions change. The Court's opinion in this case cannot with any grace stand beside the opinion authored by Justice McFadden and joined by Justices Knudson, Taylor, McQuade and Smith in *Andrus v. Irick,* 87 Idaho 471, 394 P.2d 304 (1964). True, 22 years have intervened, but in those 22 years of Idaho jurisprudence becoming more attuned to the then new "federal" rules of civil procedure, it has nevertheless become apparent that commencing around the beginning of the 1970's the Court has all too often placed rule above justice.

I.

The first issue which had to be addressed in *Andrus* was, as here, a motion to dismiss the appeal for untimeliness. In that case, final judgment was entered on November 14, 1961. The time for appeal passed without the plaintiffs' filing an appeal from the judgment against them—al-

though they did intend to appeal, a fact not in dispute. They had been properly served with a copy of the final judgment, which apparently was overlooked by temporary clerical employees not familiar with office procedure. The district court, in the person of the Honorable Arthur P. Oliver, District Judge:

set aside the judgment and ordered entry of a new judgment. The Court's order among other things provided:

"IT IS FURTHER ORDERED That defendants' counsel prepare of the signature of the Court a new judgment bearing date of April 19, 1962. Said judgment to contain the same words and phrases of that judgment dated November 14, 1961. That upon presentation of new judgment to the Court and the Court's signing of same said new judgment shall be entered in the place and stead of that judgment dated November 14, 1961."

Pursuant to this order, a new judgment, verbatim with the original except for the date, was tendered on April 19, 1962, that the defendants cross-appealed, *contending it was beyond the court's authority to enter such an order, in effect extending the time for appeal* from the judgment entered November 14, 1961. *Andrus, supra,* 87 Idaho at 476, 394 P.2d at 309 (emphasis added).

The issue was clearly presented in the emphasized portion above. Would the Supreme Court uphold the discretionary ruling of Judge Oliver which preserved in plaintiffs the right to appeal from Judge Oliver's final judgment against them, or would the Supreme Court go with the defendants' contention that the district court's actions in extending the appeal were *"beyond the court's authority."* The Court upheld Judge Oliver, although in doing so it had to analogize the proceedings below as being akin to a motion to set aside a default under I.C. § 5–905. *Id.* at 477, 394 P.2d at 310. *That* Court was a court more interested in seeing controversies determined on their merits than terminated on the technicalities of motions. *Cf. Neal v. Harris,* 100 Idaho 348, 597 P.2d 234 (1979). Justice Bakes, authoring the Court's opinion in a case where the district court had dismissed an appeal for failure to file a cost bond, wrote:

It has long been judicial policy in Idaho that controversies be determined and disposed of each on its own particular facts and as substantial justice may require. *The exercise of judicial discretion should tend to bring about a judgment on the merits. Id.* at 350–51, 597 P.2d at 236–37.

In the case now before us, although there may yet be some confusion in the Court membership, the second "final" judgment was not entered by the district court in order to extend the appeal time. The appeal time had *not* expired, and a timely appeal could have been filed.

Counsel for Equal Water Rights, in his petition for rehearing, has laid before this Court what it was that prompted him to *not* appeal from the June 17, 1982 judgment. That which appears to be most compelling reasoning is well stated:

The June decision may have purported to be a final judgment, but it was not. It did not end the suit, adjudicate the subject matter of Count 7 or determine the right to prior notice of a proposed rate increase.

The document which met the tests of finality is the Final Judgment. That document ended the suit. It dismissed the Counts on which the Court determined EWRA had not prevailed and granted relief under the Count on which EWRA had prevailed. This Final Judgment was the first and only document signed by the District Court which in any way dealt with the subject matter and rights of Count 7.

It has long been the law in Idaho that a judgment which is dispositive of only some of the Counts of a Complaint is not an appealable order.

Thus an appeal does not lie where a judgment or order is made on only a part of the issues or causes in the case leaving others undisposed of, for the

reason that such order or judgment is not final.... *Farmers Equipment Co. v. Clinger*, 70 Idaho 501, 222 P.2d 1077, 1079 (1950).

The area is now embodied in IRCP 54 and IAR 11 with the one exception that an interim appeal can be taken *only* if the District Court issues an IRCP 54(b) Certificate.

> In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. IRCP 54(b).

In this case there was no Rule 54(b) Certificate. The June Decision adjudicated "less than all the claims" of the parties. Consequently, the June Decision did not "terminate the action as to any of the claims," and the June Decision was "subject to revision at any time." IRCP 54(b). Since the June Decision was not final, and there was no Rule 54(b) certificate, it was not an appealable judgment or order. IAR 11(a)(1) and (2). *An appeal of the June Decision would have been a premature appeal and dismissed as such.* Brief in Support of Petition for Rehearing, pp. 7–8 (emphasis original).

The *Clinger* case does stand for the proposition cited:

> It is a general rule that an appeal will not lie from an interlocutory decision unless expressly permitted by statute or constitutional provision. In the absence of such provision in order that there may be a review, final judgment, order or decree must be rendered in the cause.

> Thus an appeal does not lie where a judgment or order is made on only a part of the issues or causes in the case leaving others undisposed of, for the reason that such order or judgment is not final, and a judgment disposing of a cross complaint, but not disposing of the other issues between the parties is not appealable.

In the case of *Blaine County National Bank v. Jones*, 45 Idaho 358, at page 361, 262 P. 509, 510, the Court said: "Under the statutes and Constitution of this state, appeals can only be taken from judgments that are final, or those from which appeals are specifically provided for. *Weiser Irr. Dist. v. Middle Valley, etc. Co.*, 28 Idaho 548, 155 P. 484. This court, in *Lamberton v. McCarthy*, 30 Idaho 707, 168 P. 11, held that a final judgment is 'one which disposes of the subject-matter of the controversy or determines the litigation between the parties on its merits,' following the case of *Potter v. Talkington*, 5 Idaho 317, 49 P. 14. In *Thiessen v. Riggs*, 5 Idaho 21, 46 P. 829, it was held that where the record shows no final judgment or other final disposition of the case in the district court, the appeal will be dismissed."

In *Stockton Combined Harvester, etc., v. Glens Falls Ins. Co. of New York*, 98 Cal. 557, 33 P. 633, the court held that a decree disposing of defendant's cross complaint and not purporting to dispose of other defenses is not a final judgment from which an appeal will lie.

In *Pritchard v. King*, 104 Cal.App. 460, 285 P. 1086, a demurrer to a cross complaint was sustained, and an amended cross complaint stricken, by an order entitled "judgment upon cross-complaint". From such order, the defendant and cross complainant appealed. The court said: "To that cross-complaint the plaintiff demurred. The demurrer was sustained, and the defendant filed an amended cross-complaint. Later, the plaintiff served a motion to strike out the amended cross-complaint. * * It was granted, and a purported 'judgment upon cross-complaint' was entered. From that judgment the defendant has attempted to appeal, and has brought up a bill of exceptions. The record does not disclose that any judgment in the main action has

been entered. We think we are not at liberty to pass on the appeal. The statute did not authorize an independent judgment on the amended cross-complaint. The purported judgment on the cross-complaint, as separate from the judgment in the main case, is not appealable."

In the case of *Yandell v. City of Los Angeles*, 214 Cal. 234, 4 P.2d 947, the defendant appealed from an order striking its cross complaint from the files in the action. The court held that the order was not appealable and the correctness of the order may be reviewed on appeal from the final judgment.

A "final judgment" is one which ends the suit, and appeals can only be taken from judgments that are final or those from which appeals are specifically provided for. *Blaine County National Bank v. Jones*, supra; *Provident Land Corporation v. Bartlett et al.*, 53 Cal. App.2d 383, 127 P.2d 928. *Farmers Equipment*, supra, 70 Idaho at 505–06, 222 P.2d at 1081–82.

Counsel for Equal Water Rights also brings to our attention *Koester v. Klein*, 102 Idaho 511, 633 P.2d 576 (1981), where the Court's opinion *in full* was this much:

These consolidated appeals are both from awards of attorney's fees against the state defendant. In neither case does the record contain a final judgment. The appeals are therefore dismissed.

The district judge who had presided in *Koester* was also the same judge who presided in this case, and now, because counsel for Equal Water Rights has laid before us a copy of the "non-final" judgment or order in that case, it is abundantly clear why the district court made the decision to enter a second "final judgment"—the finality of which would not be open to challenge. I can see no way to demonstrate how magnificently this Court erred in *Koester* other than by laying out the district court's memorandum opinion—which this Court evidently held to not be a final disposition by the court below.

The facts in this case are not in dispute. These facts show that Katherine Koester (hereinafter, "plaintiff") is the mother of a three year old child who is dependent upon her for support. While attending North Idaho College, plaintiff became eligible for Social Security benefits of $118.30 per month because of the death of plaintiff's father. Plaintiff stopped attending North Idaho College in December, 1977, and received her last Social Security payment in January of 1978. Her only income in January through March of 1978 was from the Social Security benefits paid in January and ongoing payments under the AFDC program, administered by Milton Klein, through the Department of Health and Welfare (hereinafter, "defendant").

Defendant considered the Social Security payment received in December of 1977 as available for support of plaintiff's child in February and March of 1978, and therefore reduced plaintiff's AFDC payment from $252 to $134.

On March 6, 1978 plaintiff filed the present action, alleging that defendant unlawfully utilized a "prior month budgeting" scheme for figuring plaintiff's AFDC allotment. Plaintiff sought mandatory injunctive relief, damages and attorney's fees.

Subsequently, defendant paid plaintiff the full amount of damages sought. For this reason, counsel for plaintiff moved for a voluntary dismissal of the present action, and now seeks an award of attorney's fees and costs.

Plaintiff's motion presents the following issue: Whether a plaintiff who sues the Department of Health and Welfare for injunctive relief and damages, resulting from an allegedly unlawful practice used by the state in administering the AFDC program, may receive costs and attorney's fees as the "prevailing party" pursuant to I.C. 12–121, where plaintiff voluntarily dismissed the suit after the Department voluntarily paid the amount sought?

The rule governing the award of attorney's fees in civil actions in Idaho is I.C.

12–121, which states that the "prevailing party" is entitled to an award of attorney's fees. Thus, the threshold determination that must be made in applying this statute is as to which of the parties prevailed.

The facts in the present case show that plaintiff was forced to bring this action in order to get relief from a budgeting method utilized by defendant, which method was later admitted by defendant to have been wrongfully applied to plaintiff. It would not comport with notions of substantial justice to allow a governmental agency to refuse to pay money justly due an individual, and then to, in effect, reward the agency for the foot-dragging performance of its statutory duties by allowing it to escape liability for the attorney's fees that the agency caused the wronged party to incur. The Court is also mindful of the fact that a case challenging a questionable practice utilized by an administrative agency may be mooted by the agency *after* the case is brought in court, the end result of which is to shield the questionable practice which may then continue.

Here, defendant performed in response to suit by plaintiff. It is therefore the conclusion of the Court that plaintiff was the prevailing party under I.C. 12–121 and is thus entitled to an award of filing fees and attorney's fees. As to the amount of attorney's fees to be awarded, it is the conclusion of the Court that plaintiff is entitled to a reasonable attorney's fee in the amount of $300. Pursuant to this limitation of amount, plaintiff's motion for award of attorney's fees should be, and is hereby, granted.

Dated this 16th day of June, 1978. The fault on the part of the district judge, hardly a grievous one if a fault at all, was in not uttering the magic words that the plaintiff's motion for a voluntary dismissal of plaintiff's own lawsuit was granted and the case dismissed, of which there could be no doubt in the minds of any reader of

reason. Health and Welfare, the appellant there, so understood it. Plaintiff Koester made no motion to dismiss the appeal.

*Koester* was argued orally on May 5, 1981. Mr. Givens reminds us that having been counsel for the plaintiffs at trial, he sat in on oral argument. Questions from the bench intimated strong doubts as to the appealability of the district court's memorandum decision awarding attorney's fees to the plaintiffs. Being so reminded of *Koester*, which earlier went unmentioned in this case, and properly so, it is now no wonder why counsel for Equal Water Rights and the district judge as well recognized the desirability of a second final judgment. So much for *Koester*. It stands as another monumental epoch to this Court's enchantment with the rules which it promulgates.[1]

Mention has already been made that in *Koester* the plaintiffs had not moved for a dismissal of Health and Welfare's appeal. Even after prompting from the bench at oral argument, they declined to so move, but on the contrary supported Health and Welfare's right to appeal. This Court's *Koester* case was known to Equal Water Rights, and presumably brought to the attention of the district court, and the point to be retained is that we have now been adequately provided with the answer to the quaere which bothered us, but expressed only in my earlier opinion of July 11, 1985: Why did an experienced trial judge enter a second final judgment?

## II.

After reargument following the Court's granting of a rehearing limited to appealability only, there surfaced a strong second reason for not summarily dismissing the appeal. Those who comprise the majority do not see it of any consequence, but I beg to differ, and suggest that our majority opinion in *Ross v. Ross*, 103 Idaho 406, 648 P.2d 1119 (1982) also cannot with any grace

---

1. Expecting that it might be asked why there was no dissent in *Koester*, I point to the insignificant amount involved. Health and Welfare

was turned away on a technical application of the rules, and would apparently conclude that the game was no longer worth the candle.

be laid side by side with today's opinion for the Court.

In *Ross* the trial court entered a partial summary judgment of divorce—both parties having by action and cross-action filed for divorces—and reserved for suitable trial date other issues. On the basis of that divorce decree the husband remarried. On appeal the wife contended that the divorce decree had been improperly awarded. Justice Bakes, always a strong advocate for the infallacy of the Court's rules, agreed with the wife's contention that she, not his new wife, continued to be entitled to the husband's earnings and any other accumulations of property even after the divorce. Justice Bakes pointed to Rule 54(b), and the husband's remarriage without having obtained a Rule 54(b) certification. In particular, Justice Bakes was incensed at the majority's use of an estoppel which, as calumny of the highest order, was said to "suggest a veiled attempt to circumvent the constitutional prohibitions imposed by the United States Supreme Court in *Reed v. Reed*, 404 U.S. 71 [92 S.Ct. 251, 30 L.Ed.2d 225] ... and *Orr v. Orr*, 440 U.S. 268 [99 S.Ct. 1102, 59 L.Ed.2d 306]...." *Ross, supra*, 103 Idaho at 422, 648 P.2d at 1135, and worse yet, said to have "rendered the certification requirements of Rule 54(b) utterly meaningless...." *Id.* at 421, n. 7, 648 P.2d at 1134, n. 7.

The majority of four, however, tranquilly adhered to the views of Justice Donaldson that:

> Even though the trial court did not certify the partial summary judgment as final as required in I.R.C.P. 54(b), for the reasons stated below, we nonetheless hold that following the principles of quasi estoppel plaintiff is estopped from alleging that error occurred in the trial court's granting of the decree of divorce.
>
> . . . .
>
> Firstly, it was plaintiff who filed for the divorce, and as stated previously she argued at the summary judgment hearing on September 20, 1976, that the divorce should be granted. This divorce, which was granted on the grounds argued by plaintiff, allowed her to be rid of her husband which she wanted, and thus conferred a benefit, and also allowed defendant to change his position in that he remarried on September 21, 1976.
>
> Secondly, plaintiff has taken advantage of the favorable provisions of the judgment. She has received large amounts of property, has had repeated executions issued on the judgment and received approximately $67,000 in cash in settlement of certain of those executions and she is now seeking to maintain a position which is inconsistent with the one in which she accepted those benefits. *See Culbertson v. Culbertson*, 91 Nev. 230, 533 P.2d 768 (1975).
>
> . . . .
>
> Because plaintiff initially sought the divorce and argued that a divorce should be granted to her, and the entry of the decree enabled defendant to remarry, as he did, and the plaintiff took advantage of the favorable provisions of the decree of divorce, we hold that it is unconscionable for her to now maintain an inconsistent position, and therefore, she is estopped to deny its validity. *Ross, supra*, 103 Idaho at 408–09, 648 P.2d at 1121–22.

There is no reason whatever why the Court today should not hold the city estopped from urging its motion to dismiss the appeal of Equal Water Rights. Observe the following:

Equal Water rights filed its notice of appeal with the clerk of the district court on January 17, 1982. On February 9, 1983, the city also appealed from the district court's judgment. Because this appeal was second in time, it was denominated a cross-appeal.

When timely appeal is filed as a matter of right, a cross-appeal may be filed by an opposing party within the time limit prescribed by these rules or within 14 days from the date the appeal is served, whichever is later. I.A.R. 15 (1983).

The city's appeal was filed January 25, 1983.[2] It contains these extremely important statements:

1. The above named cross-appellant, City of Coeur d'Alene, appeals against the above named cross-respondents to the Idaho Supreme Court from the Final Judgment entered in the above entitled action on the 7th day of December 1982, Honorable Watt E. prather presiding.

2. That the party has a right to cross-appeal to the Idaho Supreme Court, and the Final Judgment described in paragraph 1 above is an appealable order under and pursuant to Rule 11(a)(1) and (5).

3. The cross-appellant requests the preparation of the entire reporter's standard transcript as defined in Rule 25(a), I.A.R., (the transcript of recorded proceedings before the Master). R., Vol. 2, p. 488.

By the most simple of mathematical computations it is readily seen that the city was out of the time in which to appeal within 42 days of December 7, 1982—the date of the final judgment which *both* parties were appealing. That being so, the city was necessarily making its appeal by hanging onto the coattails of the appeal of Equal Water Rights. Its cross-appeal was filed and served within fourteen days of the first appeal, as I.A.R. 1 provides—BUT, provides only where the first appeal is *timely* filed. The city, then, by its notice of appeal, after having had eight days time in which to reflect, not only conceded that the appeal of Equal Water Rights had been timely filed, but hinged its own appeal on that timeliness. And, moreover, the *city absolutely certified that the judgment of December 7, 1982 was appealable.* And that is not all, the city appealed eight days after Equal Water Rights had appealed and paid the estimated fee for the 547 pages of clerk's record which we have before us. But even that is not all. Although Equal Water Rights specifically did not request a reporter's transcript, the city on its appeal did do so, and paid the estimated fee for the five volumes of reporter's transcript which we have before us. The city not only evidenced in writing its belief that the December 7, 1982 judgment was appealable, and that the city was aggrieved by it, but put a considerable amount of public monies into purchasing that transcript.

Much later, then, in June of 1982, did the city, on further reflection, decide to challenge the appeal of Equal Water Rights as untimely. But that is not all. This it did by motion to dismiss; but it did not voluntarily dismiss its own appeal as being untimely. Any amateur gambling man will recognize that as a real hedge. In this legal profession, however, we call it taking inconsistent positions.

What the city has done, then, is simply stated. It conceded the first appeal of Equal Water Rights was timely filed. It coattailed onto that appeal in order to take its own appeal. It was made aware that Equal Water Rights had paid for a clerk's record which was being prepared. It spent public monies on eight volumes of reporter's transcript which were being prepared by the judicial system (not a small task), and then in June it sought a dismissal of Equal Water Rights' appeal as untimely without moving for dismissal of its own appeal. Finally, on rehearing, it completely ignores all of the above as though it had never happened.

Whether the district court was or was not in error in entering the second final judgment, perhaps a debatable question, it is clear that both the judge and Equal Water Rights decided that to be the provident thing to do. And it is extremely clear that the city did not move to strike or expunge that second judgment from the record, but to the contrary, appealed from it.[3] And I do not doubt for a moment that that appeal was taken in good faith. It is impossible, however, to agree in the slightest that there is either merit or integrity in the belated motion to dismiss. Just as a

---

**2.** The Court's July 11, 1985 opinion mistakenly gives the date of filing as February 9, 1983, which would have made it untimely.

**3.** At oral re-argument, Justice Shepard raised this very question from the bench.

hedge is easily recognized, likewise with a judicial admission or concession, and a clear case of estoppel. Difficult but important issues have been avoided by putting those concerns aside.[4]

HUNTLEY, J., concurs.

4. The largest disappointment by far is that Justice Bakes neither rises in defense of the rules, nor to apply them. *See,* again, I.A.R. 15.